SUPREME COURT.  New-York General Term, February, 1855.
*Mitchell, Clerke* and *Cowles,* Justices.

## CHARLES A. PEVERELLY, plaintiff in error, *v.* THE PEOPLE, defendants in error.

To convict a person of arson in the second degree, under § 2 of art. 1, title 3, chap. 1, of part 4. of the Revised Statutes, by which it is enacted that "every person who shall willfully set fire to or burn, in the night-time, any shop, warehouse or other building, not being the subject of arson in the first degree, but *adjoining* to or within the curtilage of any inhabited dwelling-house, so that such house shall be endangered by such firing, shall, upon conviction, be adjudged guilty of arson in the second degree," it is necessary to prove that the building set fire to actually touched an inhabited dwelling-house, or that it was within the curtilage thereof; *adjoining,* in the section quoted, signifies *actual contact.*

Form of an indictment for an attempt to commit arson in the second degree, by firing a warehouse adjoining to an inhabited dwelling-house.

Form of a record of conviction for felony, where the defendant was tried on an indictment found against him jointly with another person, and to which the defendant pleaded not guilty and demanded a separate trial.

Form of a writ of error to remove a cause, after judgment, from the Court of General Sessions of New-York to the Supreme Court; of the allowance thereof, and of the return thereto.

THIS cause came before the Supreme Court on a writ of error to the General Sessions of New-York, which was as follows:

The People of the State of New-York to the Court of

[L. S.] General Sessions of the Peace, held in and for the city and county of New-York, Greeting:

Because, in the record and proceedings, and also in the giving of judgment in a certain cause which was in our said court before you, between *The People of the State of New-York* and *Charles A. Peverelly,* who is impleaded with Theodore L. Peverelly, for an alleged attempt to commit arson in the second degree, as is said, manifest error hath intervened to the great damage of the said Charles A. Peve-

relly, as he complains; and we, being willing that the error, if any, should be corrected, and full and speedy justice done to the parties aforesaid in this behalf, do command you, that if judgment be thereupon given, then, without delay, you distinctly and openly send, under your seal, the record and proceedings aforesaid, with all things touching or in any wise concerning the same, to our justices of the Supreme Court, of the State of New-York, for the first judicial district, at the City Hall in the city of New-York, on the first Monday of February next, together with this writ, that, the record and proceedings aforesaid being inspected by our said justices of the Supreme Court, we may cause to be done thereupon, for correcting that error, what of right ought to be done.

Witness, William Mitchell, Esquire, presiding justice of the Supreme Court of the State of New-York, for the first judicial district, at the City Hall in the city of New-York, the twenty-second day of December, one thousand eight hundred and fifty-four.

RICHARD B. CONNOLLY,<br>Clerk.

JOHN GRAHAM,

*Attorney for plaintiff in error.*

The following allowance was made on such writ by Justice Morris:

I hereby allow the within writ of error, and direct that the same operate as a stay of proceedings on the judgment upon which it is brought.

*December 22d,* 1854.  ROBERT H. MORRIS.

The answer of the Court of General Sessions to the writ of error was as follows:

The answer of the judges of the Court of General Sessions of the Peace, in and for the city and county of New-York, within named, a transcript of the record whereof mention is within made, with all things touch-

ing or in any wise concerning the same, we certify under
the seal of said court to the justices of the Supreme Court,
within mentioned, in a certain schedule to this writ an-
nexed, as within it is commanded.

By the Court.

[L. S.] HENRY VANDERVOORT,
*Clerk.*

The record of conviction returned was as follows:

*City and County of New-York, ss:*

Be it remembered, that at a Court of General Sessions of
the Peace, holden at the City Hall of the city of New-York,
in and for the city and county of New-York, on the first
Monday of August, in the year of our Lord one thousand
eight hundred and fifty-four, before Francis R. Tillou,
Esquire, recorder of the said city of New-York, justice of
the said court, assigned to keep the peace of the said city
and county of New-York, and to inquire, by the oaths of
good and lawful men of the said county, of all crimes and
misdemeanors committed or triable in the said county, to
hear, determine and punish, according to law, all crimes
and misdemeanors in the said city and county done and
committed, not punishable with death.

By the oath of Jireh Bull, foreman, and, (here follow
the names of the grand jurors) it was then and there pre-
sented as follows, that is to say:

*City and County of New-York, ss:*

The jurors of the people of the State of New-York, in
and for the body of the city and county of New-York, upon
their oath, present: That Charles A. Peverelly, &c., late
of the first ward of the city of New-York, in the county
of New-York aforesaid, merchant, and Theodore L. Peve-
relly, late of the first ward of the city of New-York, in

the county of New-York aforesaid, clerk, on the sixth day of July, in the year of our Lord one thousand eight hundred and fifty-four, at the ward, city and county aforesaid, with force and arms, about the hour of twelve o'clock in the night of the same day, a certain warehouse, of him, the said Charles A. Peverelly, there situate, feloniously and willfully did attempt to set fire to and burn; which said warehouse was then and there adjoining to a certain inhabited dwelling-house of one John Power, he, the said John Power, then and there being within the said dwelling-house, and the said dwelling being endangered by such attempt to set fire to and burn, against the form of the statute in such case made and provided, and against the peace of the people of the State of New-York and their dignity.

*Second Count.* — And the jurors aforesaid, upon their oath aforesaid, do further present: That the said Charles A. Peverelly and Theodore L. Peverelly afterwards, to wit, on the day and in the year aforesaid, at the ward, city and county aforesaid, about the hour of twelve o'clock in the night-time of the said day, did, with force and arms, willfully and feloniously attempt to set fire to and burn a certain other building of him, the said Charles A. Peverelly, the same not being a dwelling-house, nor usually occupied by persons lodging there at night; which said building was then and there adjoining to a certain inhabited dwelling-house of one John Murphy, he, the said John Murphy, then and there being within the said dwelling-house, and the said dwelling-house being endangered by such attempt to set fire to and burn, against the form of the statute in such case made and provided, and against the peace of the people of the State of New-York and their dignity.

*Third Count.* — And the jurors aforesaid, on their oath aforesaid, do further present: That the said Charles A. Peverelly and Theodore L. Peverelly, on the day and in the year aforesaid, at the ward, city and county aforesaid, with force and arms, about the hour of twelve o'clock in

the night-time of the said day, a certain warehouse, of him the said Charles A. Peverelly, there situate, feloniously and willfully did attempt to set fire to and burn ; which said warehouse was then and there adjoining to a certain inhabited dwelling-house of one Maurice Donovan, he, the said Maurice Donovan, then and there being within the said dwelling-house, and the said dwelling-house being endangered by such attempt to set fire to and burn, against the form of the statute in such case made and provided, and against the peace of the people of the State of New-York and their dignity.

*Fourth Count.* — And the jurors aforesaid, on their oath aforesaid, do further present : That the said Charles A. Peverelly and Theodore L. Peverelly afterwards, to wit, on the day and in the year aforesaid, at the ward, city and county aforesaid, about the hour of twelve o'clock in the night-time of the said day, did, with force and arms, willfully and feloniously attempt to set fire to and burn a certain other building of him, the said Charles A. Peverelly, the same not being a dwelling-house, nor usually occupied by persons lodging therein at night; which said building was then and there adjoining to a certain inhabited dwelling-house of one Edward Burke, he, the said Edward Burke, then and there being within the said dwelling-house, and the said dwelling-house being endangered by such attempt to set fire to and burn, against the form of the statute in such case made and provided, and against the peace of the people of the State of New-York and their dignity.

The eighth count was as follows :

*Eighth Count.* — And the jurors aforesaid, on their oath aforesaid, do further present: That the said Charles A. Peverelly and Theodore L. Peverelly afterwards, to wit, on the day and in the year aforesaid, at the ward, city and county aforesaid, about the hour of twelve o'clock in the night-time of the said day, did, with force and arms, willfully and feloniously attempt to set fire to and burn a certain building of

John T. Johnson, the same not being a dwelling-house, nor usually occupied by persons lodging therein at night; which said building was then and there adjoining to a certain inhabited dwelling-house of one Timothy Hassell, he, the said Timothy Hassell, then and there being within the said dwelling-house, and the said dwelling-house being endangered by such attempt to set fire to and burn, against the form of the statute in such case made and provided, and against the peace of the people of the State of New-York and their dignity.

The eleventh and twelfth counts were as follows:

*Eleventh Count.*—And the jurors aforesaid, on their oath aforesaid, do further present: That the said Charles A. Peverelly and Theodore L. Peverelly, on the day and in the year aforesaid, at the ward, city and county aforesaid, about the hour of twelve o'clock in the night-time of said day, with force and arms, a certain warehouse, known and described as one hundred and forty-seven Front-street, in the ward, city and county aforesaid, feloniously and willfully did attempt to set fire to and burn; which said warehouse was then and there adjoining to a certain inhabited dwelling-house of one John Murphy, he, the said John Murphy, then and there being within the said dwelling-house, and the said dwelling-house being endangered by such attempt to set fire to and burn, against the form of the statute in such case made and provided, and against the peace of the people of the State of New-York and their dignity.

*Twelfth Count.*—And the jurors aforesaid, on their oath aforesaid, do further present: That the said Charles A. Peverelly and Theodore L. Peverelly afterwards, to wit, on the day and in the year aforesaid, at the ward, city and county aforesaid, about the hour of twelve o'clock in the night-time of the said day, did, with force and arms, willfully and feloniously attempt to set fire to and burn a certain other building, known and distinguished as one hundred and forty-seven Front-street, in the ward, city and county afore-

Peverelly v. The People.

said, the same not being a dwelling-house, nor usually occupied by persons lodging therein at night; which said building was then and there adjoining to a certain inhabited dwelling-house of one Patrick McCarthy, he, the said Patrick McCarthy, then and there being within the said dwelling-house, and the said dwelling-house being endangered by such attempt to set fire to and burn, against the form of the statute in such case made and provided, and against the peace of the people of the State of New-York and their dignity.

L. B. SHEPARD,
*District Attorney.*

And the said Charles A. Peverelly afterwards, to wit, on the eleventh day of August, in the year of our Lord one thousand eight hundred and fifty-four, at the place last mentioned, before the said justice above named, came in his own proper person, and being brought to the bar here in his own proper person, and arraigned upon the said indictment, and having heard the said indictment read, and being asked whether he demanded a trial upon the said indictment, answers that he does require a trial thereon, and says that he is not guilty thereof, and demands that he be tried upon the said indictment separately from the said Theodore L. Peverelly; and thereupon, for good and ill, is put upon the country.

And Lorenzo B. Shepard, Esquire, district attorney for the city and county of New-York, who prosecutes for the people of the said State of New-York, in their behalf doth the like.

And afterwards, to wit, at a Court of General Sessions of the Peace, held in and for the said city and county of New-York, at the City Hall of the said city, on the thirteenth day of November, in the year of our Lord one thousand eight hundred and fifty-four, before Welcome R.

Beebe, city judge of the city of New-York, and justice of the said court, comes the said Charles A. Peverelly, and the said Loronzo B. Shepard, Esquire, district attorney, likewise comes. Therefore let a jury thereupon immediately come before the justice last above mentioned, of free and lawful men of the said city and county, each of whom hath, &c., by whom the truth of the matter may be better known, and who are not of kin to the said Charles A. Peverelly, to recognize, upon their oath, whether the said Charles A. Peverelly be guilty of the felony in the indictment aforesaid above specified, or not guilty.

And the jurors of the said jury, by John Orser, Esquire, sheriff of the city and county of New-York, for this purpose empanneled and returned, to wit: Henry Barnard, William Jones, Daniel W. Devoe, David Griffiths, Francis A. Tiffany, Lawrence Dufour, James T. Stratton, Henry C. Ball, George J. Penchard, John W. Kilsby, Stephen Robert, Edward O. Jenkins; who, being called, come; and who being then and there elected, tried and sworn, well and truly to try and true deliverance make between the people of the State of New-York, and the said Charles A. Peverelly, then at the bar, whom they should have in charge upon the said indictment, and a true verdict give according to evidence; who, upon their oath aforesaid, say, that the said Charles A. Peverelly is guilty of the felony above charged in the form aforesaid, as by the indictment aforesaid is above alleged against him.

And upon this, it is demanded of the said Charles A. Peverelly whether he hath or knoweth anything to say wherefore the said justice here ought not, upon the premises and verdict aforesaid, to proceed to judgment against him, who nothing further saith, unless as before he has said. Whereupon, all and singular the premises being seen, and by the same justice here fully understood, it is considered by the said justice that the said Charles A. Peverelly, for the felony aforesaid, be imprisoned in the

state prison, at hard labor, for the term of four years and six months.

LORENZO B. SHEPARD,
*District Attorney.*

Judgment signed this 28th day }
  of December, 1854.      }

W. R. BEEBE, *City Judge.*

By the bill of exceptions, also returned with the above record of conviction, it appeared that the prisoner, having pleaded not guilty and demanded a separate trial, was tried before Judge Beebe, city judge, on the 9th of November, 1854. It appeared, upon the trial, that the warehouse, which it was alleged the prisoner had attempted to set fire to, was not in actual contact with the inhabited dwelling-house of either of the persons named in the indictment, but was only four or five feet distant.

The defendant's counsel, among other things, requested the court to charge as follows:

That dwellings, to be adjoining to the warehouse or build-ing of the defendant, within the statute, must actually touch, or be in close contact with the latter building; that the word " adjoining " meant actual contact, and that unless the dwellings mentioned in the testimony for the prosecution were in actual contact with the defendant's building, the indictment was unsustained in this particular.

The court refused so to charge, and the defendant's counsel excepted.

There were several other questions which arose on the trial, but they need not be stated, as no opinion was expressed upon them by the Supreme Court.

*John Graham,* for the plaintiff in error, made, among other points, the following:

VI. The definition of the word " adjoining," as given in the request of the court to charge the jury, was correct, and

the refusal of the court so to charge, and its charge, as given upon this point, were erroneous.

The statute uses language that has a perfectly well understood meaning. The building attempted to be fired must adjoin, or, if not adjoin, must be within the curtilage of an inhabited dwelling. In other words, the former building must touch the latter, or if it does not, and is removed any distance from the latter, it must be within the common fence. To take this as the standard by which to construe the statute is to assume a safe one. Any other would be productive of the greatest laxity. But for the exertions which are made to arrest fires, any building on fire, or attempted to be set on fire, could be said to adjoin another, for the purposes of danger, no matter how far off the two buildings might be.

The error of the court was, in allowing the jury to define for themselves the word " adjoining," with reference to distance. No two juries would think alike on such a subject. Some might take a greater and some a less distance.

It must be observed, too, that this is a penal statute, and as such to be strictly, literally construed. ( 4 *Bl. Com.*, 225 ; 1 *Mood. & Malk.*, 341 ; *S. C.*, 22 *Eng. Com. L. R.*, 330 ; 3 *Chitty's Cr. L.*, 1129 (*5th Am. ed.*).

*A. Oakey Hall* (District Attorney), for the defendants in error.

VII. The evidence answered the meaning of the words " adjoining to :" First. By definition of the words ; Second. By context of the same section of the statute ; Third. According to the terms of the decision in *The People* v. *Gates* (15 *Wend.*, 160).

CLERKE, J. The principal question in this case depends upon the legal signification of the term "adjoining."

The word is derived either immediately or mediately through the French from the Latin language. The Latin word "*adjungo,*" from which it has sprung, signified "tc

Peverelly *v.* The People.

join to:" but the etymology of a word would be an uncertain guide to its present popular or even technical meaning. Not only words of classical and foreign origin, but those indigenous to the Anglo-Saxon stock, have, in many instances, widely departed from their primitive acceptation, and, in some instances, have been transformed into one entirely opposite and dissimilar. The word "prevent" may be cited, among many others of a similar history. It is derived from the Latin "*prævenio*," "to go before," and, in our translation of the Bible, in the liturgy, and in old theological standards, it is employed to express the idea of "assisting" and "going before." At present it means "hindrance," "impediment," and is used in no other sense.

The word "adjoin" seems popularly to have no fixed meaning. I have no doubt that it is frequently employed in ordinary language merely to express nearness; but there are no indications, in the instances in which it is more formally used, that its present signification is at all different from that of its Latin original.

Mr. Crabbe, in his *English Synonyms*, classifies together "adjacent," "adjoining" and "contiguous;" and, after giving the etymology of these words, illustrates the difference between them in the following manner : " What is *adjacent* may be separated by the intervention of some third object: 'They have been beating up for volunteers at York, and the towns *adjacent*, but nobody will list.' *Granville.* What is *adjoining* must touch in some part : ' As he happens to have no estate *adjoining*, equal to his own, his oppressions are often borne without resistance.' *Johnson.* What is *contiguous* must be fitted to touch entirely on one side : ' We arrived at the utmost boundaries of a wood, which lay *contiguous* to a plain.' *Steele.* Lands are *adjacent* to a house or town; fields are *adjoining* to each other; houses *contiguous* to each other."

In the case of *Rex* v. *Hodges* (1 *Mood. & Malk.*, 341), this meaning was given to the word "adjoining," in a case not unlike the present. The prisoner was indicted, on the 7*th.*

and 8*th George IV.* (*ch.* 29, § 38), for stealing pear trees, described, in one of the counts of the indictment, as growing on ground "adjoining," &c., to a dwelling-house; held, "adjoining" imported "actual contact," and, therefore, ground separated from a house by a narrow walk and paling, with a gate in it, was not within the meaning of the act.

One of the statutes under which the prisoner in this case was indicted provides that "every person who shall willfully set fire to or burn in the night-time any shop, warehouse or other building, not being the subject of arson in the first degree, but *adjoining* to, or within the curtilage of, any inhabited dwelling-house, *so that such house shall be endangered by such firing*, shall, upon conviction, be adjudged guilty of arson in the second degree." The court below were of opinion that the words, "*so that such house shall be endangered by such firing*," were sufficient to show that the statute meant any house near enough to be endangered. It must be admitted that there is some force in this view, as these words appear to be superfluous if the word "adjoining" signified only a house in actual contact with the place set fire to; for every house in actual contact, it may be alleged, must necessarily be endangered by such an act; but if such a qualification of the word "adjoining" were to be accepted, it would give the term a much more extended signification than the prosecution contends for or than the court below evidently intended. It would be impossible to limit, in a city, the distance in which any house may not be endangered when any other building in it is on fire; the danger would depend upon the combustibleness of the intervening houses, the preparations of the incendiary, the state of the weather, and the means of suppressing the original fire or of arresting its progress.

Even if these words, therefore, cannot be applied to any other antecedent, it is safer to consider them as surplusage, than to give them the effect of changing a term from its well established and recognized signification.

Peverelly *v.* The People.

I am of opinion that the court below erred in its charge to the jury on this point, and that a new trial should be granted.

MITCHELL, P. J. The act under which the defendant was indicted provides (omitting some words not now material) that every person who shall willfully set fire to or burn, in the night-time, any building not being the subject of arson in the first degree, but adjoining to or within the curtilage of any inhabited dwelling-house, so that such house shall be endangered by such firing, shall be guilty of arson in the second degree.

The building set fire to by the defendant was a store and not inhabited, and did not touch any inhabited house, nor was it within the curtilage of any, but was in a block where there were several dwelling-houses; two of them, each, on another lot; and not more than ten or twenty feet from the store. The act may admit of two constructions: one, that it applies to a person who shall so set fire to or burn a building, &c., adjoining an inhabited house, that such adjoining house shall be endangered by such fire; the other, that it applies to a person who sets fire to a building, &c., which so adjoins a dwelling-house that the dwelling-house is endangered by the fire.

If this construction were right, then the sentence would read, that the person should be guilty who should set fire to a building, &c., so adjoining to or so within the curtilage of any inhabited dwelling-house that such house should be endangered by such fire; and the "so" must then qualify the term "within the curtilage," as well as the term "adjoining."

There could be no need of thus defining the meaning of being "within the curtilage;" that was already sufficiently understood, and this makes it probable that the term "so" was meant not to qualify the words "adjoining," or being "within the curtilage," but the verbs "shall set fire to or

burn." If the prisoner should set fire to or burn a store, in such a manner that he endangered an inhabited dwelling-house, adjoining to or within the same curtilage as the store, by such fire, then he was to be deemed guilty. But if he set fire to the store in such manner that the adjoining dwelling-house was not in danger by such fire, then he was not guilty under this section.

This being the proper reading of the section, the question remains, what does "adjoining to" mean in this act. In addition to what my brother, Clerke, has said on that subject, it may be proper to refer to 2 *Revised Statutes* (*p.* 657, § 10), which, after arson in the first degree is defined in section nine, declares that no warehouse, outhouse, &c., shall be deemed a dwelling-house, or part of a dwelling-house, within the meaning of the preceding section, unless the same be joined to, immediately connected with, and part of a dwelling-house.

If this store and the two dwelling-houses near them had been separated as they are, and had been used as parts of a hotel, and no one ever slept in this store, or was in it when it was set on fire, could it, by possibility, have been held that the defendant was guilty of arson in the first degree, and that this store joined to and was immediately connected with it for the purposes of the hotel, and to which it was applied, although not by contact, but it would not be joined to it. If the terms, "joined to and immediately connected with," both refer to the position of the building, and not to the uses to which they are applied, as is probably correct, then each helps to define the other, and to show that both were used, as well as the words "part of the dwelling-house," so as, by an accumulation of words of nearly the same meaning, to secure the construction which each phrase was intended to have, an actual contact.

The term "adjoining" is used in its strict sense, as indicating actual contact, in the law as to division fences (1 *R. S.*, 553, §§ 30, 31, 33), and in section four hundred and one of the

Code, prescribing the counties in which motions shall be made, and probably in other statutes.

The offence of the defendant is so great that it is quite natural an effort should be made to bring him within the section under which he is convicted; but the court is not at liberty to go beyond the fair meaning of the legislature in a highly penal statute.

A new trial should be granted.

Judgment reversed and new trial ordered.

---

SUPREME COURT. Albany General Term, December, 1855. *Parker, Wright* and *Watson*, Justices.