**Opinion delivered March 8, 1887.**

No. 2275.

VICTORIA COUNTY ET AL. v. VICTORIA BRIDGE COMPANY.

1 JURISDICTION—TOLL BRIDGE—STATUTES CONSTRUED.—A toll bridge company, incorporated under the provisions of section 79 of the act of April 3, 1874, does not acquire, under its charter, such an exclusive right to maintain a bridge as to take away the right of the county in which it is situate to establish a free bridge within three miles above or below it.

2. CONSTRUING CHARTERS OF INCORPORATION.—Any doubt in regard to the true construction of a legislative act authorizing or granting a charter under which special privileges are claimed, should be resolved in favor of the State and the public.

3. INJUNCTION—TOLL BRIDGE—JURISDICTION—CONTRACT.—A county commissioners court granted to an incorporated toll bridge company whose bridge was already constructed, the use of the site on which the bridge stood for the period of ten years. In a proceeding by injunction to restrain the county from opening for travel a free bridge within three miles of the toll bridge, *held*, without considering what would have been plaintiff's rights had the bridge been constructed after the order granting the privilege was obtained, the order was not a contract, since the bridge was built when the order was entered, and the order subsequently made, authorizing a free bridge within three miles of the site, did not impair the obligation of a contract.

APPEAL from Victoria. Tried below before the Hon. H. Clay Pleasants.

The case is sufficiently stated in the opinion.

*Stayton & Kleberg* and *A. B. Peticolas*, for appellants: On their proposition that, in the construction of a charter granted by a sovereignty to a private corporation, every doubt arising under such charter as to the extent of powers and privileges conferred under said charter shall be resolved in favor of the sovereignty and against the corporation, they cited Selman v. Wolfe, 27 Texas, 6; Cooley on Constitutional Limitations, second edition, page 395; Wade on Retroactive Laws, section 52; Chenango Bridge Company v. Binghamton Bridge Company, 27 New York, 87; same case, 3 Wall, 51; Bradley v. New York & New Haven Railroad Company, 21 Connecticut, 306; Charles River Bridge Company v. Warren Bridge, 11 Peters, 420; Hartford Bridge Company v. Union Ferry, 29 Connecticut, 210; Sedgwick on Construction of Statutory and Constitutional Law, 291 and note; Morawetz on Private Corporations, sections 323, 1054 and 1057; High on Injunctions, section 902.

On their proposition that the first and second provisos contained in the act of 1874, under which appellee is chartered, put a limitation upon the rights of appellees which only protects them from a toll bridge or toll ferry within the prescribed limits, they cited Sedgwick on Construction of Statutory and Constitutional Law, 49; Broom's Legal Maxims, 652.

On their proposition that the incorporation of a company under a general law, which, by its terms, does not extend exclusive privileges, does not create such a contract with the State as would prevent the Legislature from creating a rival right by subsequent legislation, although the exercise of the latter may greatly damage or even destroy the profits of the former, they cited Charles River Bridge Company v. Warren Bridge Company, 11 Peters, 420; Turnpike Company v. State, 3 Wallace, 210; 30 New York, 44; 14 Barbour, 405; Morawetz on Private Corporations, section 1057; Wade on Retroactive Laws, section 52, and authorities cited in note 4.

On their proposition that the right to provide for passage to and fro through the country over public highways is inherent in the people, and it will not be held that the Legislature has surrendered that sovereign right, unless it has done so in clear and unmistakable words, they cited Cooley on Constitutional Limitations, second edition, 395; Bradley v. New York & New Haven Railroad Company, 21 Connecticut, 306.

On their proposition that the exercise of the authority granted by statute to the county commissioners court to erect the bridge complained of is not a damaging within the meaning of the State Constitution, even though the exercise of such authority may deprive the appellee of the profits of its franchise. The State, by granting the franchise, does not contract to preserve the value of the franchise, but only that the franchise itself shall not be taken away or altered, they cited Charles River Bridge Company v. Warren Bridge Company, 11 Peters, 420; Hartford Bridge Company v. Union Ferry Company, 29 Connecticut, 210; Turnpike Company v. State, 3 Wallace, 210; 14 Barbour, 405; Fall v. Sutter County, 21 California, 238.

On their proposition that appellee could sustain no legal damage unless it had such exclusive right or interest as would prohibit the appellants, in the exercise of legal authority, from erecting a free bridge within three miles above and three below the site of appellee's bridge. There can be no damage where there is no right susceptible of injury, they cited Weeks's Damnum Absque Injura, 9; Bouvier's Dictionary—Injury; Field on Damages, 634; also authorities cited under second proposition.

*Glass & Callender*, for appellee: On their proposition that the charter of a private corporation is a contract, and within the protection of the Constitution of the United States and the Constitution of the State of Texas, which forbid the impairing of the obligation of a contract, they cited United States Constitution, article 1, section 10; Texas Constitution, article 1, section 16; Dartmouth College v. Woodward, 4 Wheaton; Binghamton Bridge, 3 Wallace, 73, 74; New Orleans Gas Company v. Louisiana Light Company, 115 United States Reports, 650; New Orleans Water Works Company v. Rivers, 115 United States Reports, 674; Louisville Gas Company v. Citizens Gas Company, 115 United States Reports, 683; Cooley on Constitutional Limitations, 279; 42 American Decisions, note 728.

On their proposition that a charter granted by the general law confers the same rights as if it had been granted by special law, and is entitled to the same protection; the general law is as special to each corporation as if no other was created by it, they cited State Bank of Ohio v. Knoop, 16 Howard, 369–380; Franklin Bridge Company v. Wood, 14 Georgia, 80–84.

That counties are merely local subdivisions and political agents of the State. "The powers and functions of the county organi-

zation have a direct and exclusive reference to the general policy of the State, and are, in fact, a branch of the administration of that general policy." The authority of a county over highways, bridges and ferries is held in trust only for the use and benefit of the State at large, and is always subject to the control of the State, they cited Coleman v. Thurmond, 56 Texas, 520, 521; Dillon on Municipal Corporations, sections 23, 25; Cooley on Constitutional Limitations, 192, 240.

That the police power of the State extends to the construction of bridges in any portion of its territory; and counties, as the political agencies of the State, are generally authorized to exercise that power within their respective limits. But every grant of a charter for a toll bridge, whether made by special act or general law, suspends that power for the time and within the limits prescribed by the charter; and neither the State itself nor the county as the agent of the State, can exercise that power in such a manner as to impair the obligation of the contract expressed by that charter, they cited Hudson v. Cuero L. & E. Company, 47 Texas, 58; Binghamton Bridge, 3 Wallace, 73, 74.

On their proposition that the rights of appellees under the State Constitution of 1876 were violated if their property was damaged, although it may not be physically injured or encroached upon. The fact of being damaged—that its value is materially impaired—entitles them to the protection of the constitutional provisions as fully as if their property had been actually taken, they cited Texas Constitution, 1876, article 1, section 17; Gulf, Colorado & Santa Fe Railway Company v. Eddins, 60 Texas, 656, 663; Same v. Bock, 63 Texas, 243; Same v. Graves, White & Willson, section 580; Belt Line Street Railroad Company v. Crabtree, 5 Texas Law Review, 553; Elgin v. Eaton, 83 Illinois, 535; American Reports, 412; Johnson v. Parkersburg, 16 West Virginia, 402; 37 American Reports, 779; Kansas v. Wallruff, United States Circuit Court, 22 Central Law Journal, 277, 282; Snyder v. Western Union Railroad Company, 25 Wisconsin, 60; Matter of Utica Railroad Company, 56 Barbour, 464; Sutherland on Damages, volume 3, page 435.

(In this case exhaustive and able printed arguments were filed by R. W. Stayton for appellant and by Glass & Callender for appellees.)

GAINES, ASSOCIATE JUSTICE. This suit was instituted by the

appellee to restrain appellants from opening for travel a free bridge on the Guadalupe river, near a toll bridge owned and controlled by the former.   During the progress of the cause a temporary injunction was granted, which was made perpetual on final hiearing.

In the year 1875, certain persons being then the owners of the toll bridge above named, filed with the Secretary of State articles of incorporation as a bridge company, for the purpose of keeping and maintaining a toll bridge, at the point on the river above named, where their bridge was already situated, and thereby became a body corporate, invested with the rights, privileges and franchises granted to bridge companies so incorporated by section 79, of the act of April 23, 1874.   This section reads as follows:

"Whenever any person or persons shall file with the Secretary of State any articles of association for the erection and main-tenance of a bridge or ferry, it shall not be lawful for any other toll bridge or toll ferry to be established on the same stream, within the limits specified in said article; provided, that said limits shall not extend more than three miles above and three miles below said bridge or ferry; and provided further, that this section shall not be so construed·as to prohibit bridges and fer-ries at the crossing of any road on such stream, within such limits, declared either before or after the erection of such bridge or ferry to be a public road by the county court of the county in which such crossing is situated."

At the time appellee obtained its charter, the site of the bridge was within the jurisdiction of the town of Victoria.   Subse-quent to this, however, in March, 1879, an act of the Legislature was passed which so reduced the limits of the town that, as ap-pellee claims, the site of the bridge was left without the bounds of its jurisdiction.   Appellee's bridge being situated on a public road of the county, on the twenty-third day of May, 1884, it applied to the commissioners court of Victoria county for a grant of the use of its site for the term of ten years, and the court on the same day made the following order:

"And now came on to be heard the application of the Victoria Bridge Company, praying for a grant of the use of the present site of their iron bridge, with the approaches thereto, for the term of ten years from this date, for the purpose of maintaining their said bridge thereon, and' with authority to take tolls as authorized by their charter, and under the regulation of this

court as provided by law. And said application being considered by the court, it was ordered that the same be granted to the extent of the jurisdiction of the court in the premises."

The first question presented is, did the law under which the bridge company was incorporated give it such an exclusive right to maintain a bridge at the place of its site and within the limits of three miles above and below it on the river, as to take away the right of the county to establish a free bridge within the limits named. Free bridges are not expressly excluded by the language of the section which has been quoted. But it is maintained, in support of the affirmative of the question, that the object of prohibiting the erection of bridges near that of the toll bridge of an incorporated company, was to protect the company in the enjoyment of the profits of its enterprise; and that if the Legislature meant to protect them against another toll bridge, which would merely divide and lessen its income, it must necessarily have intended to protect it against a free bridge, which would destroy its profits altogether. But in our opinion the argument is not sound. It must be borne in mind that the franchise proffered by the Legislature to all persons who see proper to accept it is a voluntary grant, and that it was competent for the law making power to annex such conditions to the grant as it saw fit. On the other hand, if the conditions were unreasonable, or the value of the franchise liable to be destroyed because the erection of free bridges was not prohibited, it operated to the injury of no one, for no one was bound to accept the grant. It may be argued that no prudent man would hazard the expenditure requisite to such an enterprise if he construed the law to mean that free bridges were not excluded. But it is to be remembered that the Legislature may have well considered that its first duty was to the public at large, and may therefore have considerately declined to grant any franchise that would take away the right of the people to the enjoyment of free transit across the streams of the country, when the increase of the population and wealth of their respective counties was sufficient to justify the expense of providing them. It is a general rule in construing charters, that if the intention of the Legislature can not be ascertained from the language, construed in the light of surrounding circumstances, the doubt will always be resolved in favor of the State and the public. (Charles River Bridge Company v. Warren Bridge Company, 11 Peters, 420; Hudson v.

Cuero L. & E. Company, 47 Texas, 56; The Binghamton Bridge Case, 3 Wallace, 74.) But we think the language of the statute under consideration is plain, and resort to this rule is not necessary in order to interpret it. In saying that "it shall not be lawful for any other toll bridge or toll ferry to be established," it is clear that the Legislature did not mean to prohibit free bridges and free ferries, because, if this had been the intention, it could have been very clearly expressed by the mere omission of the word "toll" before the words "bridge" and "ferry."

The argument for the other construction amounts to this, that because free bridges are much more detrimental to the interest of a toll bridge corporation than a toll bridge, we must strike out a qualifying word in the statute, so as to give it meaning different from the plain import of its language as written. This violates the plainest rules of the interpretation of statutes, and reverses the maxim that the mention of one thing is the exclusion of the other.

But it is also argued that the use of the words "bridges and ferries," without the qualifying word "toll," in the second proviso of the section, indicated that free bridges and ferries were meant to be excluded by the former clause, in which the words "toll bridge" and "toll ferry" are used. But the meaning of the proviso is clear. It might have been sufficient to have said in the proviso that toll bridges, etc., might be erected at crossings on public roads—there being no exclusion as to free bridges; but in this case the qualifying word was not necessary, because no bridge was to be excluded at the crossings named. If the words "toll bridge" and "toll ferry" had been used in the proviso, then the argument would probably have been urged that, since only toll bridges, etc., were allowed at these crossings, free bridges were to be altogether excluded. The construction of the section insisted upon on behalf of appellee is not supported, therefore, by the language of this proviso. The whole argument ignores the fact that in making the law the Legislature may reasonably be presumed to have had in view the interests of the public and not that of the corporation. We think, therefore, that the company's charter did not prohibit the county of Victoria from erecting and maintaining a free bridge on the river within three miles of the toll bridge of appellee.

But it is also contended that the action of the commissioners court of Victoria county in granting appellee the use of its site for ten years, is a contract, and that the establishment of a free

bridge within a few yards of the toll bridge, with approaches to · the same road, is an impairment of the obligation of that contract and can not be permitted.  If appellee had constructed no bridge at the site named, and the commissioners court had contracted with it for the erection and maintenance of a toll bridge at that point for a term of ten years, it would have been a very serious question whether that court could have erected a free bridge sufficiently near the other to divert the travel from it. But such is not the case.  Appellee already had a toll bridge which it had been operating under a charter granted by the State. The public road at that point had become subject to the control of the commissioners court, and in order to obtain the right to use the site, appellee made application to the court for the privilege, and it was granted.  It seems this is a very different thing from a contract on the part of the court for the erection of a toll bridge.  In the latter case, in consideration of the expense of erecting and maintaining a bridge, the court grants the right to take tolls for a certain number of years.  But in the case before us, a company already having a bridge and taking tolls applies and obtains the privilege of permitting it to remain in the same place for a limited period of time.  The one has the elements of a contract, but can the latter be deemed anything more than a mere license?  Let us suppose that the company had proposed to the commissioners court to enter into a contract under article 4432 of the Revised Statutes, proposing to construct a toll bridge and to enter into bond as required by article 4433.  The court might well have refused, upon the ground that they deemed it to the interest of the public that a free bridge should be erected at the same crossing before the time proposed in the contract should expire.  On the other hand, they might readily grant a license to use the site for a toll bridge already existing, for the reason that such license would not take away their right to erect a free bridge when they deemed it proper to do so.  It would seem that the company did not consider that it was making the contract with the county authorized by article 4432 of the Revised Statutes, because it nowhere appears that it gave the bond required by the next succeding article.  Article 4433 provides that "the commissioners court, before granting a license to any person to build a toll bridge, shall take bond," etc.  In the absence of such bond we must hold that if the license actually granted be good for any purpose, it is lacking in the essential elements of such a contract as the court was authorized to make

under the articles of the statutes just referred to, and that it did not deprive the county of the right to erect a free bridge for the convenience of the public, when it saw proper to exercise that power. If the county had the right to erect the bridge, the bridge company must be held to have acquired its privileges with a full knowledge of this right, and can not claim that its property is being damaged for public use by the establishment of the free bridge.

The determination of the questions we have passed upon is decisive of the case as against the appellee. The court below should have dissolved the injunction and dismissed the bill, and because it did not do this, the judgment will be reversed and rendered for appellant.

*Reversed and rendered.*