Dᴀɴɪᴇʟ D. MᴄIɴɴɪꜱ *v.* Jᴀᴍᴇꜱ M. Pᴀᴄᴇ ᴇᴛ ᴀʟ.

1. Fᴇʀʀɪᴇꜱ. *License. Infringement of right. Injunction. Damages. Code.* 1892, §§ 3942–3949.

The right of a licensee operating a public ferry established under code 1892, §§ 3942–3949, is exclusive as to those operating another public ferry, without authority, on the same stream and but a few hundred yards distant, and he may enjoin them or sue for the damage sustained by diversion of tolls.

2. Sᴀᴍᴇ. *Location of ferry. Public roads. Code* 1892, § 3942.

The right to operate a public ferry within a short distance of the site of a bridge which, until its recent destruction, had been a part of a public road, under a license authorizing its location "at or near" such bridge site, is not impaired by want of power in the board of supervisors to authorize its location elsewhere than exactly at the bridge site, under code 1892, § 3942, requiring all ferries to be located "on land over which a public road has been laid out and is kept up."

3. Sᴀᴍᴇ. *Private ferry.*

A ferry located in the vicinity of a public ferry, without authority, for the use of those operating it and such other persons as might see fit to avail of it, and from whom tolls are received when voluntarily offered, is not a private ferry.

4. Iɴᴊᴜɴᴄᴛɪᴏɴ. *Dissolution. Extinguishment of right.*

When the right upon which an injunction was obtained has expired by limitation of time before the hearing of an appeal from a decree dissolving the same, such decree will not be disturbed by the supreme court.

Fʀᴏᴍ the chancery court, second district, of Perry county. Hᴏɴ. Nᴀᴛʜᴀɴ C. Hɪʟʟ, Chancellor.

*S. E. Travis*, for appellant.

The word "license," used in the statute, implies a right, a privilege, exceptional and exclusive to its possessor—a privilege guarded and protected by law. We admit that the board may confer the license whenever and upon whomsoever it will, to the extent required by public good; it may establish a ferry, or more than one, for each highway, if public necessity demands; and might have licensed another to be operated right by the side of appellant's, if it deemed proper, giving him no cause for complaint. A man, acting under its authority, is subject to its discretion in furtherance of the public needs; but a license so granted is exclusive until modified or recalled by the conferring power. The owner of the privilege is protected in it, and no individual, on his own responsibility, can exercise any right in opposition thereto.

The appellees are maintaining their ferry entirely without the pale of the law, and therefore unlawfully. They may call it a private ferry, but it is not that, and the law does not recognize it as such.

The appellant maintains that he has complied with the law fully, in charges and otherwise. The laws are ample to protect the public from overcharges and all other improper conduct of ferrymen, and no supposed grievance would authorize appellees to erect a rival ferry without a license from the board of supervisors, and if another highway had been necessary, the board could establish that as quickly as a ferry could be established.

We submit the following authorities in support of the foregoing propositions: Constitution of 1890, secs. 70, 170; code of 1892, §§ 3942–3951, inclusive; code of 1892, § 289, as amended in laws 1896, chap. 132; *Blake* v. *McCarthy*, 56 Miss., 654; *Supervisors* v. *McFadden*, 57 Miss., 618; *Sullivan* v. *Supervisors*, 58 Miss., 790; *Seal* v. *Donelly*, 60 Miss., 658; *Montjoy* v. *Pillow*, 64 Miss., 705; *Nixon* v. *Reid*, 32 L. R. A., 315; *Patterson* v. *Woolman*, 33 L. R. A., 536; *Toll Road* v.

*People*, 37 L. R. A., 711; *Wright* v. *Nagle*, 101 U. S., 921; *Covington* v. *Turnpike Co.*, 164 U. S., 578, s. c. 12 Am. & Eng. Enc. L. (2d ed.), pp. 1089, 1090, 1095, 1099, 1101, 1103, 1104, 1113, 1114, 1115; Elliott on Roads and Streets, secs. 85, 88 and 98, and notes.

*Alexander & Alexander*, on the same side.

A ferry is in the nature of a public highway. Cooley Con. Lim. (6th ed.), 731. In *Blake* v. *McCarthy*, 56 Miss., 654, our court says: " To keep a public ferry is in the nature of a public employment. It is regarded in law very much in the same light as a public road." It is a franchise, and this excludes a merely private privilege inherent in the citizen. It is essential to the character of a franchise that it should be a grant from the sovereign authority. See 14 Am. & Eng. Enc. L., 5, and cases cited. *Supervisors* v. *McFadden*, 57 Miss., 618. A ferry franchise is exclusive except as against the right of the sovereign. It is a privilege conferred, a license given, which, though exclusive while enjoyed, is revocable when the interest of the public shall require it. *Sullivan* v. *Board of Supervisors*, 58 Miss., 800.

" It requires a considerable expense to prepare and equip a ferry for the public convenience, and it would be bad policy, if not unjust, in a county to disappoint any reasonable expectation which a ferryman might have in making such preparation." *Howell* v. *Ferriss*, 36 Ark., 471. " It is not necessary that the grant be exclusive to entitle the ferryman to injunction against an unlicensed ferry." *Tugwell* v. *Eagle Pass Co.*, 74 Tex., 493. See, also, the numerous cases, English and American, cited in the opinion, page 493.

" It is a principle of common law that if one has a ferry under a franchise and another erects a ferry, or builds a bridge, so near it as to interfere with its revenue, it is a nuisance, entitling to injunction." *Ogden* v. *Gibbons*, 4 Johns. Ch., 150, 160. See, also, *Broadnax* v. *Baker*, 55 Am. Dec., 633.

The whole theory of our constitution and statutes is, like the theory of the common law, that ferries are public highways. Full jurisdiction over them is conferred on the board of supervisors. They are uniformly classed with roads and bridges, both by the constitution and in the statutes. A person can no more establish by his own act a public ferry than he can establish a public road. The obvious scheme of our statutory provision as to ferries (§ 3942–2951) is to give a franchise with its fair emoluments, and to exact, under heavy penalties, performance of the public duties required. It would be intolerable in the last degree to place the holder of a public ferry franchise under bond, limit his fees, impose strict duties, and forbid under heavy penalties any discrimination, and impose liability on the bond for penalties and forfeitures, if in return for all this he could not be protected against an unlicensed ferry by private individuals within a stone's throw of his own. Injunction against the infringement or the nuisance is the proper remedy. See *Newberg Co.* v. *Miller*, 6 Johns., ch. 100; *Town of Golconda* v. *Feld*, 108 Ill., 426; *Mayor, etc.*, v. *N. J. & N. Co.*, 106 N. Y., 28.

The learned chancellor seems to have rested his decision solely on the ground that the defendants had the right to maintain a private ferry. The evidence and pleadings both show that the rival ferry is operated as a public one. It is not used exclusively by the defendants who own it. The fair presumption is that defendants are merchants and business men in Hattiesburg, who are seeking to attract trade by means of a public free ferry. Efforts like this have been frequently made, but uniformly condemned as an infringement. See *Morris* v. *Farmers, etc., supra; Ogden* v. *Gibbons, supra; Shinn* v. *Cotton*, 52 Ark., 91.

There is nothing in the point that McInnis' ferry is not exactly coterminus with the old public road. That was a matter for the board of supervisors. It might be very inexpedient to try to make landings on the exact point where the public road

strikes the river. The board granted the license to establish it "at or near" the road. See 12 Am. & Eng. Enc. L., 1097, and note.

"Nothing in the nature of a ferry requires it to be operated from only one point or place on one shore to a single place on the other." *Mayor, etc.*, v. *N. J. & N. Co.*, 106 N. Y., 28.

*Hartfield & McLaurin*, for appellees.

The board of supervisors may license toll ferries where the public road crosses streams, but nowhere else. Code 1892, § 3942. Under the code of 1871, § 2379, and under the code of 1880, § 873, they could license them "wherever they may think proper." The purpose of the limitation in the code of 1892, § 3942, was to prevent the board of supervisors from exercising any kind of jurisdiction over private ferries. There never was any good reason why the county authorities should have been vested with power over private ferries. The appellants claim a monopoly in the business of ferriage across Leaf river, between Hattiesburg and Augusta. This is not tenable ground. The exclusive privilege is only on the highway where it crosses Leaf river, and even there the board of supervisors may license another ferry if the public good required it. See the Montjoy case, 64 Miss., 705. See, also, *Seal* v. *Donnelly*, 60 Miss., 659. Monopolism is opposed to the spirit of our laws, and cannot be inferred in the absence of specific legislation. The general rule of law is that a man may lawfully do any act not *malum in se*, unless prohibited from doing so by statute. Since 1892 there has been no statute which prohibited any man from operating a private ferry, and it is certainly not essentially wrong or criminal to do so.

The ferry is part of the public highway, a link in the chain of public travel. It is licensed for the benefit of the public, and not of the ferryman. He cannot complain if the public prefer to travel elsewhere than on the public road. The public have the undoubted right to travel on private highways, across

water as well as across the land.   A man has the right to trans-
port another along a private highway for hire whether it runs
across land or water.·   This is elementary law that the court is
not likely to explain away in such a way as to create a monop-
oly to the hurt of the appellees and others.

Besides all this, the ferry of the appellant was located about
one hundred and fifty yards below the public highway.   In
order to get to it on the east side of the river, he had to secure
a private way, just as the appellees have done.   In order to
reach it on the east side, he had to open up his lane that had
been closed for years.   The proof shows that the ferry might
have been located "at" the bridge on the public highway,
where the order of the board prescribed that it should be
located.   The appellant chose to locate it somewhere else, on
a private way, in order to keep from digging down the banks
and in order to shorten the distance across the river.   By so
doing he placed himself on an equal footing with appellees.
His ferry, though authorized by the board of supervisors, was
only a private ferry on a private way.   He does not seek
equity with clean hands.

*Mc Willie & Thompson,* on same side.

1. The statute prescribes that "all ferries are to be located
on land over which a public road has been laid out and is
kept up."   Code 1892, § 2942.   The road in question was
laid off and kept up to the site of the steel bridge over Leaf
river until that bridge was swept away by floods in 1900, and
the public road continued to run over the old line as long as its
location remained unchanged by competent authority.   The
ferry of appellant is not located at the site of the old bridge
nor on land over which a public road has been laid out and is
kept up.   It is a hundred yards or more south of the public
road, and to get to it the public have, at considerable inconven-
ience, to go through appellant's premises, along a road which
has not been laid out and dedicated to the public's use, and

across which the appellant maintains a gate. The appellant's location of this ferry necessitated a departure from the public road on the west side of the river over his own land, and on the east side over the land of another person, from whom he secured a parol license for the passage of the same.

2. It has been held in this state that the erection of a free bridge within half a mile of a toll bridge, along with the other incidents of the case, constituted a naked trespass, for which there was an ample remedy at law. The rule is, of course, the same when ferries instead of bridges are involved. *Blewitt* v. *Vaughn*, 5 How. (Miss.), 418.

The constitutional inhibition against the reversal of a decree of the chancery court on the ground that the cause was one of common law jurisdiction, does not weaken the force of this citation, since it is authority for the affirmance appellees desire, and not for a reversal.

3. The appellant's license having some months since expired by limitation of time, he is not entitled to a reversal of the decree dissolving the injunction. *Wiswell* v. *First Cong. Church*, 14 Ohio St., 31–42; *Piedmont, etc., R. R. Co.* v. *Speelman*, 67 Md., 260; *Van Vechten* v. *Howland*, 12 Abb. Pr. (U. S.), 461; *Reynolds* v. *Everett*, 67 Hun, 291.

TERRAL, J., delivered the opinion of the court.

The free bridge over Leaf river, on the Augusta and Hattiesburg public road, became impassable in the spring of 1900 by injuries suffered from high water, when the board of supervisors, in order to provide a crossing over the river until the bridge could be repaired, established a ferry in lieu of said bridge, and authorized its operation by the plaintiff below, the appellant here.

The license to operate the ferry was granted April 30, 1900, and was to continue for five months only. The appellant provided himself with a flatboat and the necessary and usual equipments of a ferry, at some expense, but located the site of it at

a point on the river about one hundred yards below the bridge site, where, for many years before the building of the bridge, a ferry was used for passage over the river.  The appellant owned the land on the west side of the river, and obtained, for a consideration, the permission of the owner of the land on the east side of the river to cross and use a landing on that side of the river and to connect it with the public road leading to Augusta.

The defendants, in open disregard of the plaintiff's rights, set up a ferry across the river a few hundred yards above the bridge site, and operated it for their own use and for the use of such persons as chose to cross there, and from whom they received pay when voluntarily offered.  The appellant enjoined the defendants from operating their ferry as a public ferry, and claimed to be remunerated by them for the damages sustained by their misconduct.  The injunction was dissolved September 6, 1900, and from that decree an appeal was taken.

A public ferry cannot be erected and operated in this state without a special license therefor, and such license bestows upon the licensee the exclusive right of such ferry—exclusive as to all persons, except that the board of supervisors may establish as many ferries as the public convenience may require at the same or adjacent places of crossing.  Every such licensee, however, is required to give bond with security for the performance of the obligations assumed by him, which impose upon him the duties of keeping a proper and safe boat and equipments, and of his constant attendance at the ferry, and of the due and speedy transportation over it of all persons and property desired to be transported, and to secure these and other stringent duties required of him he is placed under heavy liabilities, civil and criminal, for their performance, all of which is necessary for the public convenience; and as a remuneration for his services and liabilities, he is allowed a fixed rate of ferriage.  The right secured to the licensee is a legal right, created by public law, and not to be infringed except by

the authority of the state itself; and such right would be of no avail unless the party holding it is protected by law in its enjoyment. Indeed, it is a maxim of law that there is no right without a remedy, for " whensoever the law giveth any right," says Coke, "it also giveth a remedy." Coke on Litt., 56. The ferry right of appellant should have secured to him the tolls lost to him by the infringement of his right by the defendants, and they should make him whole for the damages that he has sustained, to be measured by the amount of tolls diverted.

There seems to be made a claim by the defendants that theirs is a private ferry. The circumstances repel such claim, and, if it be true, it must be supported by proper evidence. If their ferry would have been maintained by the defendants, even if the steel bridge were in repair and fit for use, there is probable room for contention that it was a private ferry, but if it was established in consequence of the bridge being broken, and would not have been used by them if the bridge was passable, then it is but a device to wrong the appellant and it is an infringement of the right secured to him by public authority. The fact that the ferry of appellant is not placed precisely at the broken bridge does not infect with any infirmity his ferry privilege, because of the well-known rule of law that where the public way is for any cause impassable, the public have a right to pass over adjacent lands in order to continue their journey, and to do so as long as the necessity continues.

An injunction against the infringement of a ferry right is a common preventive remedy for such grievance, and was properly granted here, and was erroneously dissolved; but, inasmuch as the right of appellant to operate his ferry expired twenty-four days after the injunction was dissolved, it will not be reinstated, as the right to it is now gone by limitation of time. *Livingston* v. *Van Ingen*, 9 Johns. R., 535; *Young* v. *Harrison*, 6 Ga., 141; *C. B. Co.* v. *Paige*, 38 Am. Rep., 414; *Somerville* v. *Wimbish*, 7 Gratt., 205; *Newton* v. *Cubett*, 104 E. C. L. R., 30; *Smith* v. *Harkins*, 3 Ire. Eq., 613; *Stark* v.

*McGowen,* 1 Nott & McCord, 387; *Sullivan* v. *Board of Supervisors,* 58 Miss., 800.

We are of the opinion that the injunction was improperly dissolved, but as the right to it has now passed the decree will not be disturbed, and the case is

*Remanded for further proceedings, in accordance with the principles herein announced.*