NOAH H. GREEN, J. T. GREEN AND DALLIE GREEN, APPELLANTS, VS. F. C. IVEY, APPELLEE.

1. Where a person is properly licensed to operate a ferry over a river at a point between two adjcining counties, under the statute laws of Florida, he has a right in a court of equity to an injunction restraining another not so licensed from operating a ferry, at cr so near his license ferry as to be an infringement upon his ferry rights.

2. Under the laws of Florida the county commissioners have no authority or power to grant an exclusive franchise for operating a ferry at any particular point, but they have a reasonable discretion in determining whether one or more ferries shall be licensed at any point, having regard to the public interests and necessities.

3. Although a ferry license has been properly granted by the county commissioners to a party to operate a ferry at a particular point on a river, between two contiguous counties, and said ferry is in operation, a court of equity, on the application of the party owning and operating the ferry, should not grant an injunction against another party enjoining him from attempting to acquire a license for operating a ferry at or near the  same point, on  the ground of an attempted infringement of the rights of the party licensed, the question being one in the first instance within the reasonable discretion of the county commissioners, and depending for its determination upon the public interests and necessities.

Appeal from the Circuit Court for Suwannee County.

The facts in the case are stated in the opinion of the court.

*F. L. Rees*, for Appellauts.

*J. N. White*, for Appellee.

HOCKER, J.

On the twenty-ninth of May, 1887, appellee filed his bill against appellants in the Circuit Court of Suwannee county, alleging that during the year 1876, or 1877, a ferry-boat crossing was established at what was then known as Rowland's Bluff, now called Branford, across the Suwannee river, between the counties of Suwannee and Lafyette, for the transportation of passengers, vehicles and merchandise across said river at said point; that afterwards, to-wit: in 1880, license was granted establishing such ferry as a public ferry; that in 1880 such license was renewed for the period of ten years; that in 1896 orator became and still is the owner of said ferry and the franchise thereof, and at all times since his purchase has maintained, operated and kept said ferry in condition to transport passengers, vehicles, stock and merchandise across said river at said point, and still does so for the hire and charge established by law, and that said ferry is operated across said river between the termini of the public roads ending at said river brink in Suwannee and Lafayette counties; that orator is entitled in law to the profits, if any are had for operating said ferry; that on or about April, 1897, the said defendants, without authority of law, combining to injure your orator in the business of operating said ferry, and against your orator's rights in

the premises, proceeded to establish a ferry at Branford, Florida, within a short distance, to-wit; within two hundred yards of orator's ferry, and have established and are now operating the same, and are conveying passengers, vehicles, stock and merchandise across said Suwannee river at Branford, for hire and reward as toll therefor, and that such toll and rate of hire has not been fixed as required by law, and that defendants have not obtained the license and concurrence of the county commissioners of Suwannee and Lafayette counties as required by law, and that the operation by the defendants of their ferry draws from and decreases the profits of orator's ferry business to that extent that the income will not amount to the running and operating expenses of the latter; that the amount of toll paid at said ferry does not more than pay the expenses of maintaining and operating orator's ferry, with a reasonable interest on the outlay; that orator under the law and the terms of his purchase is compelled to maintain, keep and operate said ferry, and the operation of defendants' ferry tends to the manifest wrong, injury and oppression of your orator. The bill further alleges that his remedy at law, if he has any, is inadequate; that the defendants' ferry is operated in the name of Noah H. Green, one of the defendants, who is totally insolvent, and that an execution against him upon a judgment in favor of your orator for damages must of necessity be returned *"nulla bona,"* that J. T. Green & Co. own the boats, flats, cables and tackles used in operating their ferry, but have made no endeavor, so far as your orator is informed, to obtain a legal permit for themselves to operate such ferry, and have some understanding with defendant Noah H. Green, the details of which are unknown, whereby Noah H. Green is em-

powered with property belonging to J. T. Green & Co. to do your orator irreparable injury in operating said unauthorized ferry, and that said ferry of defendants is not operated between the termini of public roads or highways in and between Suwannee and Lafayette counties. To the end that defendants may show cause why orator should not have relief and may be required to answer the allegations of the bill, orator prays for a temporary injunction restraining defendants from operating their said ferry at Brandford, and from attempting to perfect a license to operate such ferry, and from selling or otherwise disposing of their pretended or real ferry rights and pivileges, and that on a final hearing said injunction be made perpetual; also praying subpoena, injunction and general relief. The foregoing is the substance of the bill.

The defendants filed a joint and several answer to the bill, containing a demurrer to the first paragraph of the bill as being vague, indefinite and uncertain, which is not argued here in the brief of appellants. They admit that they believe some kind of a ferry-boat crossing was begun and operated at Branford across the Suwannee river, between the counties of Suwannee and Lafayette, about the year 1876, or 1877, but deny that in 1880 any license was granted establishing such ferry as a public ferry, or that in 1890, A. D., such license was renewed for the period of ten years, and demand strict proof of the same. They are informed and believe that J. A. Ivey and R. A. Ivey, two brothers of complainant, F. C. Ivey, pretended that license had been granted to them establishing such ferry as a public ferry, and that they claimed that in 1890 such pretended license had been renewed, but deny that such license was ever granted to them, or ever renewed, because if they ever applied for such license they never com-

plied with the requirements of law in such cases made and provided, and that such license has never been issued to them or any one of them, and therefore could not be renewed, and say that such license could not be issued or renewed except by the person or persons applying for same entering into a good and sufficient bond to be fixed and approved by the board of county commissioners and complying with other requirements of law, which bond has not been given by J. A. and R. A. Ivey, or F. C. Ivey, nor by any other person, so defendants are informed and believe. Defendants further say they are informed and believe that said J. A. Ivey and R. A. Ivey and F. C. Ivey are the only persons who have ever claimed, or pretended to claim, the said ferry now claimed by complainant; that said J. A. Ivey and R. A. Ivey pretended to own said ferry for several years and until about the year A. D. 1896, when they pretended to sell or give their rights and interests in and to the same to complainant, F. C. Ivey, but defendants most positively deny that they owned the franchise thereof, or ever owned the same, and, therefore, that F. C. Ivey is not the owner of such franchise, because it does not exist, or ever has existed, and defendants have a perfect right to operate their ferry. Admits that complainant operates the ferry as alleged, but alleges he does so without authority of law. The answer admits that defendants about March, 1897, proceeded to establish a ferry at Branford, over the Suwannee river, between Suwannee and Lafayette counties, and within two hundred yards of complainant's ferry, and were operating the same at the time of filling the complainant's bill, and until restrained by order of the court, but deny that they were doing the same without authority of law, and allege that their ferry was duly and legally licensed in

the name of Noah H. Green, acting for himself and defendants, by the board of county commissioners of Lafayette county, to operate the same; that their rate of toll was fixed in their license by the board of county commissioners of said county, and that defendants, by Noah H. Green, acting for himself and defendants J. T. Green & Co., presented said license to the board of county commissioners of Suwannee county at their regular meeting on the first Monday in April, 1897, for their concurrence in the rate of toll, which application was deferred until the first Monday in May, and on that day, from not understanding the nature of the application, the board wrote the word "rejected" on the back of the license; that afterwards members of the board assured Noah H. Green they did not understand the nature of the application, and would certainly concur in the rate of toll at a future meeting, viz: June, if defendants would apply for the same, and the license was returned to him for that purpose; that the rate of toll would have been concurred in by the board of county commissioners of Suwannee county on the seventh of June, A. D. 1897, if defendants had not been restrained from having the same done; that their ferry also is operated between termini of roads and highways between the counties of Lafayette and Suwannee which are equally as public, and are kept in safer and better traveling condition and are more constantly traveled than those leading to the ferry of complainant.

The foregoing are enough of the substantial allegations of the answer to present the views we entertain of this case. Replication was filed, and the cause was referred to a special master to take testimony and make certain findings of law and fact. Testimony was taken and the master submitted his report. To this report the defend-

ants filed exceptions, and these upon the hearing were overruled and a final decree rendered for the complainant in the following words: "This cause being ready for final hearing and coming on to be finally heard upon notice to defendants and the special master's report, which is in all things confirmed, and consideration of the proofs, pleadings and said report of said special master.—It is considered, ordered, adjudged and decreed as follows, to-wit: that the equities in said cause are found with the complainant; that said defendants N. H. Green and J. T. Green & Co., a copartnership composed of J. T. Green and Dallie Green, their agents, employes and servants, be and each of them are hereby perpetually enjoined and restrained from operating their ferry at Branford, Florida, (as alleged in complainant's bill) across the Suwannee river where said river flows between the counties of Suwannee and Lafayette, and from transporting passengers or freight of any kind therewith for hire or otherwise, and from attempting to perfect a license to so operate such ferry, and from selling, assigning or in any wise disposing of their pretended or real ferry rights and privileges. It is further ordered that complainant recover one half of the costs in this cause from the defendants, including twenty-five dollars additional allowance to E. J. Vann, special master, herein, which is hereby ordered allowed, and that complainant pay one-half of the costs in this cause. All of said costs to be taxed by the clerk of this court. Done and ordered at chambers in Live Oak, Florida, March 15th, 1898" From this decree the defendants appealed.

There are several assignments of error, but the only one we think it essential to notice is "that the court erred in rendering the final decree dated March 15th, 1898." In

order to this we will state the material propositions which we think the evidence establishes. We think that there was sufficient evidence to justify a finding that J. A. Ivey and R. A. Ivey received a license from the board of county commissioners of Suwannee county on fifth of June, A. D. 1880, to operate their ferry at Branford, between Suwannee and Lafayette counties, and that the board of county commissioners of Lafayette county concurred in the rate of toll prescribed in this license on August 2nd, 1880. This license was for ten years. We think also that there was evidence sufficient to justify a finding that on June 3rd, 1890, another license was granted to J. A. Ivey and R. A. Ivey by the board of county commissioners of Lafayette county to operate their ferry at Branford for ten years, between Suwannee and Lafayette counties, and that the county commissioners of Suwannee county also made an order continuing their old license, conditioned upon the filing by them of a bond, which bond the order recites was filed and approved.

We think the evidence sufficiently shows that the rights of J. A. and R. A. Ivey in and to the said ferry and an interest in the franchise were transferred and assigned by them to complainant F. C. Ivey in 1896. We think that the evidence shows that a public licensed ferry existed at Branford from 1880 until the filing of the bill in this case, and that when the bill was filed complainant was in the possession of the ferry and was operating the same under the franchise assigned to him by R. A. and J. A. Ivey.

The court house in Lafayette county was burned in 1891 or 1892, and some of its records were destroyed. The original papers in regard to the license of the Iveys were not found, and may have been lost or burned. We think,

however, the evidence offered establishes the above recited facts.

We further are of opinion that the evidence shows that Noah H. Green was granted a license to operate a ferry at Branford by the county commissioners of Lafayette county on March 1st, 1897, and that the rates of toll to be charged were fixed in the license; that he attempted to obtain a concurrence of the board of county commissioners of Suwannee county in April, A. D. 1897, and that the said board in May rejected the application, but that members of the board afterwards assured Noah H. Green they had rejected his application under a misapprehension, and that upon another application his request would be granted, but that his further attempt to obtain the concurrence of the board of county commissioners of Suwannee county was prevented by the injunction issued in this case.

We are further of opinion that Noah H. Green was acting for himself and his co-defendants in endeavoring to obtain the license to operate said ferry.

We are further of the opinion that the defendants, at the time of the filing of the bill, and the granting of the injunction in June, 1897, were operating their ferry at Branford and within two hundred yards of the ferry of complainant, and were charging toll for transporting freight and passengers across the Suwannee river, to the prejudice and injury of the rights of complainant.

Chapter 3039, laws of 1877, and Chapter 3300, laws of 1881, are substantially brought forward into the Revised Statutes in sections 637 to 645 inclusive, and are the statute laws applicable to this case.

There is a general denial in the answer of defendants that either complainant or J. A. and R. A. Ivey were

legally authorized to operate their ferry at Branford, and another specific denial that they ever gave bond as required by law, but no other specific denial in the answer, nor any argument in the brief of appellant directed to any specific failure of complainant or J. A. and R. A. Ivey to comply with the law. We think, as before stated, that the evidence sufficiently justifies a finding that R. A. and J. A. Ivey were licensed to operate their ferry in 1890, and that they gave satisfactory bond; and further that they were actually operating their ferry in 1896, and had been so doing since 1880. If there were irregularities in obtaining their license, they are not specifically shown, and so long as they were actually licensed and the license was not void, the defendants can not be heard in this proceeding to question their right.     Owens v. Roberts, 6  Bush (Ky.), 608; 12 Am. & Eng. Ency. Law (2nd ed.) p. 1103; Douglass' Appeal, 118 Pa. St., 65, 12 Atl. Rep. 834; Collins v. Ewing, 51 Ala. 101; Patrick v. Ruffners, 2 Rob. (Va.) 209.

We are of opinion that the complainant was entitled to an injunction to prevent an infringement upon his ferry rights by any person or persons *not legally licensed to operate a ferry.*   Owens v. Roberts, *supra;* Douglass' Appeal, *supra;* Collins v. Ewing, *supra;*  Hartford  Bridge Co. v. Town of East-Hartford, 16 Conn. 149;   Town   of Golconda v. Field, 108 Ill. 419;   Hazelip v. Lindsey,   93 Ky. 14, 18 S. W. Rep. 832; McRoberts v. Washburne, 10 Minn. 23; 3 Kent's Com. *459;   Midland Terminal  and Ferry Co. v. Wilson, 28 N. J. Eq. 537; Carroll v. Campbell, 108 Mo. 550, 17 S. W. Rep. 884; Capital City Ferry Co. v. Cole & Callaway Trans. Co., 51 Mo. App. 228; Smith v. Hawkins, 3 Iredell's Eq. (N. C.) 613. There are some cases which hold that the right to an injunction does not

exist unless the right of complainant is exclusive. Butt
v. Colbert, 24 Texas, 355; McEwen v. Taylor, 4 G. Green
(Iowa), 532. But we are of opinion the weight of author-
ity and the better opinion are in favor of the right.
Carroll v. Campbell, 108 Mo. 550, 17 S. W. Rep. 884;
Tugwell v. Eagle Pass Ferry Co., 74 Texas 480, 9 S. W.
Rep. 120, 13 S. W. Rep. 654; McInnis v. Pace, 78 Miss.·
550, 29 South. Rep. 835. It seems that at common law
the invasion of such a franchise is a nuisance, and the
party aggrieved had his remedy at law by an action on the
case for a disturbance, and in modern practice he usually
resorts to chancery to stay the injurious interference
(3 Kent's Com. 459) and to prevent a multiplicity of suits.
A party may have a franchise, though it be not in its
terms exclusive of the right of the State to grant another,
and having it, no reason is apparent why he should not
have it protected against infringement by another who
has no franchise. Hazelip v. Lindsey, 93 Ky. 14, 18 S. W.
Rep. 832; Tugwell v. Eagle Pass Ferry Co., supra; Mid-
land Terminal and Ferry Co. v. Wilson, 28 N. J. Eq.
537.

We are further of the opinion that the defendants at
the time they were enjoined were not legally authorized
to operate a ferry at Branford, inasmuch as there had
been no concurence by the county commissioners of Su-
wannee county in the rate of toll fixed by the county com-
missioners of Lafayette county, which under section 643
Revised Statutes was a condition precedent to the effec-
tiveness of the license (see note, 37 L. R. A. 712), and
that in operating their ferry they were injuring the com-
plainant in his franchise to such an extent and in such
manner as warranted the court in enjoining them as un-
licensed ferrymen from carrying on their ferry business.

To this extent we think there is no error in the orders or decrees of the Circuit Court.

The only other proposition we deem it necessary to consider is whether the court erred in restraining the appellants from attempting to perfect their license to operate their ferry. At common law it seems to have been considered that a franchise to operate a ferry was in its nature exclusive of contiguous competition (3 Kent's Com. 459; 3 Bl. Com. 219), but we conceive the modern doctrine to be that such a right is not exclusive of the power of the State to grant other and competing franchises, unless the State by the terms of the grant has made the first franchise exclusive. Where public rights and interests are concerned this seems to be the settled doctrine of this country. Proprietors of Charles River Bridge v. Proprietors of Warren Bridge, 11 Peters, 420, is the leading case on the subject; Shorter v. Smith, 9 Ga. 517; Fanning v. Gregoire, 16 How. 524; Fall v. County of Sutter, 21 Cal. 238; Victoria Co. v. Victoria Bridge Co., 68 Texas 62, 4 S. W. Rep. 140; Turnpike Co. v. Montgomery County, 100 Tenn. 417, 45 S. W. Rep. 345; Mills v. County of St. Clair, 8 How. 569; Hudspeth v. Hall, 111 Ga. 510, 36 S. E. Rep. 770. The bill of complaint does not allege that the complainant possessed an exclusive franchise, nor does the proof show that he had, and a very casual reading of the statute precludes the idea that the legislature intended to authorize the board of county commissioners to grant exclusive ferry franchises. Whether there should be one or more ferries at or near a particular locality is left to the judgment and discretion of the county commissioners.

It is hereby considered, ordered and adjudged that so much of the decree appealed from as enjoined the defend-

ants from attempting to perfect a license to operate a ferry at Branford is erroneous, and is reversed. Hudspeth v. Hall, 113 Ga. 4, 38 S. E. Rep. 358.

The costs of the appeal to be paid equally by the appellants and by the appellee.