by employing members of this union only. He always endeavored to obtain union men, and only employed nonunion men when such men were not available; and the efforts of the defendants to induce Simpson to employ a member of this union in place of Davis was not unlawful. Nor did the fact that Simpson was induced by the defendants to substitute a member of the defendant corporation in the plaintiff's place cause an injury to him which could be the foundation of any action against either the employer or those who had induced the employer to substitute one of their own members for the plaintiff.

(28 App. Div. 451.)

ELDERT v. LONG ISLAND ELECTRIC RY. CO.

(Supreme Court, Appellate Division, Second Department. April 19, 1898.)

1. NUISANCE—OBSTRUCTION OF SIDEWALK.
   A wall of masonry and an iron structure erected along the middle of a highway by a surface railroad company, to connect its tracks with those of an elevated railroad company, without any competent legal authority for such erection, constitutes a nuisance.

2. RAILROADS—JUNCTION—SURFACE AND ELEVATED ROAD.
   Subdivision 5 of section 4 of the "Railroad Law" (2 Rev. St. [9th Ed.] p. 1252, c. 39), empowering railroad corporations to "join or unite" their railroad with any other railroad, does not authorize a connection between a street-surface railway and an elevated railroad by an inclined plane, where the property owners have consented only to a surface road.

3. NUISANCE—INJUNCTION.
   In an action by a property owner to enjoin a surface railroad company from maintaining upon a public highway a wall and iron structure constituting a nuisance, it appeared that, while the structure was not in front of plaintiff's premises, it began at or about opposite the side boundary line thereof, and that the highway led to the county town. *Held*, that the facts warranted a finding of special injury to plaintiff, and that he was entitled to maintain the action.

Appeal from special term, Queens county.

Action by Luke Eldert against the Long Island Electric Railway Company. From a judgment enjoining defendant from maintaining on a public highway a wall of masonry and an iron structure, erected to connect defendant's railway track with the Kings County Elevated Railroad at the county line between Queens and Kings, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Meyer Auerbach, for appellant.
F. H. Van Vechten, for respondent.

GOODRICH, P. J. The plaintiff and two other persons, not parties plaintiff, are the owners, as tenants in common, of property on both sides of Liberty avenue, and the owners in fee of the adjacent roadbed of the highway upon which the structure in question is erected. The record contains an agreed statement of facts, in which, and also in the court's finding of facts, it is stated that the plaintiff's land lies on both sides of Liberty avenue, beginning at a point about 1,000 feet easterly from the line dividing the counties, and extending easterly about 750

feet, and that the plaintiff and two other persons, "as tenants in common, are the owners of the fee of the roadbed of said public highway known as Liberty avenue, in front of said premises, subject to the public easement of the right of passage and repassage over the same." The defendant is a corporation, organized under the general railroad laws of the state, applicable to street-surface railway companies, for the purpose of constructing and operating a street-surface railroad along certain public highways in Queens county, including Liberty avenue, and extending thence easterly to Broadway, in the town of Jamaica. It is further found that upon a portion of Liberty avenue, and about the center of the roadbed, the defendant has erected a solid embankment or wall of masonry, about 8 feet in width, from a point 1,000 feet easterly from the dividing line of the counties; that the embankment starts at the level of the grade of Liberty avenue, and thence extends about 200 feet westerly, by a gradual slope, to a maximum height of about 10 feet above the grade of the avenue; that, from the westerly end of the wall, the defendant has erected iron girders, in the middle of the avenue, about 25 feet apart, and about 10 to 35 feet in height, on which girders rests a structure of iron in the form of a railroad track trestle, with a gradual slope upward to and connecting with the railroad tracks and structure of the Kings County Elevated Railroad, at the dividing line between the counties; that the defendant erected this structure with the permission and consent of the highway commissioners of the town, and for the purpose of connecting its track with that of said elevated road; and that Liberty avenue is 60 feet wide, and there is a space of 25 feet on each side of the structure. The court found, as matter of law, that the defendant had no authority to erect the structure; that the authority or consent of the highway commissioners was not comprehended within their powers, and conferred upon the defendant no right to erect the structure; that it is a nuisance and unlawful burden on the property rights of the plaintiff, and has worked him an injury, as owner of the fee of the road and the land on both sides of Liberty avenue, "abutting upon that portion of the avenue upon which the defendant has erected the wall of masonry and structure aforesaid." The judgment enjoined the defendant from erecting, constructing, or maintaining said structure upon Liberty avenue in front of the property on said avenue, now owned by the plaintiff and the other parties as tenants in common, and directed it, within 30 days, to remove the same "from the roadbed of said Liberty avenue in front of the premises aforesaid." From this judgment, the defendant appeals.

There is no evidence that any part of the structure is erected opposite the plaintiff's property. I assume that the roadbed of Liberty avenue, referred to in the agreed statement, findings, and judgment as belonging to the plaintiff, is only that part of the avenue upon which the plaintiff's property abuts. Such property is described as commencing at a point about 1,000 feet easterly of the dividing line of the counties, and running thence easterly 750 feet; while the structure in question is described as commencing at a point 1,000 feet from the dividing line of the counties, and running thence westerly,—that is, towards the county line. In other words, there is a point 1,000 feet from the

county line, and the plaintiff's lands are all easterly of that point; while the structure rises and extends westerly from that point, so that no part of the structure is exactly opposite the plaintiff's lands.

But it does not follow from this that the plaintiff has no individual right of action, or that he has no interest in the subject other than that which belongs to the general public, and that on that account this action is maintainable only in the name of the people. Taking the description of the plaintiff's premises as commencing at a point exactly, instead of "about," 1,000 feet easterly from the county line, and the defendant's structure as commencing at a point 1,000 feet easterly from said line, the plaintiff's lands adjoin or are adjacent to the highway where the structure begins. In Holmes v. Carley, 31 N. Y. 289, a question arose under a statute giving jurisdiction to a justice of the peace to try an action, either in the county where the plaintiff resided, or "before some justice of another town in the same county next adjoining." The corners of four towns met at one point, and it was held that the diagonal towns adjoined each other at the corner. In Peverelly v. People, 3 Parker, Cr. R. 59, the question arose on an appeal from a conviction for arson. The statute defined the crime to be the firing of a building not the subject of arson in the first degree, but adjoining or within the curtilage of any inhabited dwelling house. The indictment was for firing a warehouse adjoining an inhabited dwelling house. The court said that the term "adjoin" seemed to have no fixed meaning, but held that the buildings must actually touch or be in close contact with each other, to fall within the definition of "adjoining." The statute relating to division fences (1 Rev. St. [9th Ed.] p. 753) requires the erection of fences by the owners of two adjoining tracts of land. Here it is evident that the statute relates to lands running side by side. But in the case at bar the dividing point, where the structure begins, is adjacent to the plaintiff's property, and is spoken of as being on a road leading to Jamaica, and about, and not exactly, 1,000 feet from the county line. Jamaica is the county town, and the largest town of Queens county; and with this town, it may be assumed, all residents of the county, including the plaintiff, have frequent business. A public and continuing nuisance on the highway leading to this business center necessarily inflicts upon the plaintiff inconvenience and damage beyond that inflicted upon more distant owners. If the structure was not erected by lawful authority, it is a purpresture and a nuisance. The court, upon the facts, has found that it "constitutes a nuisance and an unlawful burden on the property rights of the plaintiff, and has worked an injury to him."

This brings us to the question whether the structure is a nuisance. The defendant is organized as a street-railway company. It had the right to lay its tracks on the surface, and only on the surface, of the highway. It claims that the law gave authority to the highway commissioners to permit the erection, above the grade of the highway, of a structure to connect with the elevated road. We find no such power resident in the highway commissioners. Their power, in respect to a street-surface railroad company, is limited to granting it permission to extend its surface road or some branch thereof, still on the surface. The elevated structure was therefore erected without the consent either

of the abutting owners or of the local authorities, and was unlawfully built. The law is well settled that "any permanent or habitual obstruction in a public street or highway is an indictable nuisance, although there be room enough left for carriages to pass." Such was the decision of the court of appeals in Davis v. Mayor, etc., 14 N. Y. 506, 524, where the court also held that, if a railway were placed in a street "without right, the authors of the act could not defend themselves from the charge of nuisance. The authorities for this position are constant and uniform, and leave no doubt upon the question"; citing numerous authorities.

Section 385 of the Penal Code defines a nuisance as consisting, among other things, of an act which "unlawfully interferes with, obstructs, or tends to obstruct  *  *  *  a public street or highway." In the Davis Case, supra, the court held that "that which is authorized by competent legal authority cannot in law constitute a nuisance"; and the defendant contends that it obtained the right to erect the structure, under the railroad law (2 Rev. St. [9th Ed.] p. 1252, c. 39, § 4, subds. 4, 5), which reads:

"Sec. 4. Subject to the limitations and requirements of this chapter, every railroad corporation, in addition to the powers given by the general and stock corporation laws, shall have power:  *  *  *  (4) To construct its road across, along or upon any  *  *  *  highway.  *  *  *  (5) To cross, intersect, join, or unite its railroad with any other railroad before constructed, at any point on its route and upon the ground of such other railroad corporation, with the necessary turnouts, sidings, switches, and other conveniences in furtherance of the objects of its connections."

But article 4, § 90, which provides for the organization of companies for the construction of street railways, requires the filing of a map and profile. It nowhere appears that any profile was filed, and it may therefore be assumed that the intention of the organization was to construct a road only upon the surface of the highway. Indeed, its certificate states that it is to be a "street-surface railway," and its route is stated to be "along" certain highways, including Liberty avenue. Certainly, there was no intention in the organizers to construct any other than a street-surface railroad. The original consent of the highway commissioners, given in pursuance of section 91 of the railroad law, provided that "the said tracks shall be laid in the center of said avenue, and the present grade thereof shall not be changed without the written consent or order of said commissioners." In 1895 the company applied to the commissioners for permission "to change the plan of construction  *  *  *  for the purpose of making a convenient connection with the railroad of the Kings County Elevated Railroad Company"; and the commissioners gave permission "to elevate one track of its railroad on the westerly one thousand feet of said Liberty avenue by a gradual incline rising westerly along said Liberty avenue, and connecting with" the said tracks.

The underlying question is whether a connection between a street surface railway and an elevated railroad, by an inclined plane, is a joining or union, in the sense of section 4 of the railroad law. We are of the opinion that it is not. No elevated structure was originally contemplated by the company when it was organized. The property owners might and did consent to a surface railroad, but they have given

no consent to an elevation above the grade of the highway. This is clearly an additional burden, not contemplated when their consent was given. That consent was to a surface road, and not to an elevated structure. A consent for the latter must be obtained from the abutting owners, within the decision of Colonial City Traction Co. v. Kingston City R. Co., 153 N. Y. 540, 47 N. E. 810. The consent of the highway commissioners, if it means anything, refers to the extension of the road, or the building of a branch thereof; and section 91 forbids an extension or branch without the consent of one-half of the abutting owners and of the local authorities. The record contains no such consent of abutting owners, and, without it, the erection of such a structure on a public highway is a nuisance.

With these views, we cannot do otherwise than affirm the judgment. All concur.