(89 App. Div. 379.)

BENNETT v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. RAILROADS—CHANGE OF GRADE—DAMAGE TO PROPERTY.
   A railroad company owning its right of way, purchased for the purpose
   of constructing a surface railway thereon, constructed its road before
   plaintiff acquired title to property situated across a street 38 feet wide
   from the railroad, and afterwards the railway company constructed an
   inclining elevation or embankment some 500 feet in length, and about 10
   feet high at the point opposite plaintiff's building, in order to connect
   with an elevated railway. The structure intercepted the view from plain-
   tiff's premises, and prevented people on a portion of the street on the
   other side of the railway from plaintiff's premises from seeing the lower
   portion of such premises, which were designed as a store, and the use
   of the railway was accompanied with more noise than formerly, and
   trains were run at more frequent intervals. Held, that the change was
   within the general authority of the railway as conferred by law, and the
   consequences were the natural and unavoidable result of the exercise
   of the authority, and the injury to plaintiff was damnum absque injuria.

Appeal from Special Term, Kings County.

Action by Hannah Bennett against the Long Island Railroad
Company. From a judgment for plaintiff, defendant appeals. Re-
versed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS,
HIRSCHBERG, and HOOKER, JJ.

William J. Kelly, for appellant.
Robert Stewart, for respondent.

HIRSCHBERG, J. I am unable to discover any legal basis for
the judgment appealed from. The action is brought to restrain the
defendant from maintaining an elevated structure in front of the
plaintiff's premises on Atlantic avenue, in the borough of Brooklyn,
and from operating its steam railroad thereon, and the judgment
grants the injunction unless the defendant pay the plaintiff the sum
of $600 as past damages to her property and a like sum for future
damages.

The structure complained of is wholly upon the private property or
right of way of the defendant. That property never was any part
of a public street or highway. It runs between the two sides of
Atlantic avenue; that avenue having been laid out and opened on
either side of the railway property, viz., on the north and south sides,
after the construction of the railroad. The railway property has
been continuously used for the operation of a steam surface road
for more than 50 years. The plaintiff's property consists of a house

and lot situated on the south side of the avenue. The plaintiff and defendant have acquired their titles from a common grantor, who first deeded the railroad strip to the defendant's predecessor, the Brooklyn & Jamaica Railroad Company, to be used and occupied for the purposes of a steam surface railroad, and who afterwards deeded the plaintiff's lot to a grantee from whom, through various mesne conveyances, it has descended to her. Her title was acquired in 1891, at which time, and until the change in the defendant's roadbed was made of which the plaintiff complains, the tracks were practically on a level with the surface of the street. The change was made in the year 1898, and consists of a structure built upon the soil in the nature of an incline commencing at grade at a point east of the plaintiff's property and rising gradually to a point west of her property where the tracks curve to the north, passing over Atlantic avenue to private property, and there connecting with the tracks of the elevated railroad. Since the connection was made, the defendant has operated passenger trains over the structure in connection with the elevated road in addition to the trains previously operated on the tracks at the grade of Atlantic avenue. The structure is not built across any of the streets intersecting or crossing Atlantic avenue. Its entire length is 575 feet, of which the learned trial justice has found that 240 feet is built of stone and 335 feet of boxed girders of steel or iron built on steel columns. The height of the structure where it passes the plaintiff's premises is 9 feet at the east and 10 feet at the west end, and its distance across the south side of the street from the plaintiff's premises is 38 feet and 11 inches.

The learned trial court has found that "the going up of the cars on this incline and turning the curve is at times accompanied with unusual and disturbing noises, and that the structure intercepts the view from plaintiff's premises to the opposite side of the street, and prevents people from seeing the lower portion of plaintiff's building, being that portion that is designed for and occupied as a store." It was further found "that the running of defendant's cars over such elevated structure is accompanied by unusual noise, smoke, and casting of soot and cinders over and beyond that theretofore caused by operating the surface road, and that by reason thereof, together with the interference with the light and air and view of plaintiff's premises by reason of such elevated structure, the plaintiff has been damaged, and will continue to be so damaged, and the value of her said property materially depreciated; that said elevated structure, and the operation thereof, constitute and are a nuisance, and the same already have damaged and depreciated the value of the plaintiff's property, and will continue to do so in the future. It may be conceded that the operation of the defendant's road since the change has been attended with more noise than formerly; that trains are run at much more frequent intervals, and probably that they occasion more noise, when run upon the elevated structure, than they did when run upon the surface of the ground. Yet if the change is within the general authority conferred upon the defendant by law as a railroad corporation, the consequences complained of are the natural and unavoidable result of the exercise of statutory authority, and could no more fur-

nish the basis of a claim for additional compensation than could the natural increase of business and travel and the consequent necessity for more trains, when due to the natural growth of population and business along the routes of railroads generally. The second-story windows of the plaintiff's house are higher than the defendant's structure, and her witness, a civil engineer, admitted that the incline offered no obstruction whatever to the passage of light to them. The only evidence given as to injury to light (excepting, of course, by the smoke of passing trains) was confined to the nighttime, and was addressed to the fact that the structure caused a shadow to be cast upon the street at night from an electric street light located on the opposite or north side of Atlantic avenue. No authority, however, is cited in support of the proposition that a property owner has any easement as against an adjoining property owner for the unobstructed diffusion of the rays of an artificial light. And so little valid complaint exists as to the casting of additional soot, ashes, and cinders since the change of grade that the plaintiff's main witness, her daughter, in charge of the property, frankly testified that she had noticed nothing of that kind, while no witness testified with definiteness and precision in support of that feature of the complaint.

It is evident that the character of the annoyances in this case differs materially from that which existed in Garvey v. Long Island R. R. Co., 159 N. Y. 323, 54 N. E. 57, 70 Am. St. Rep. 550. There the defendant constructed a turntable immediately adjoining the plaintiff's premises, and operated it continuously and unreasonably in such a manner as to shake the plaintiff's house from top to bottom, to crack the walls, to move the bed springs so as to awaken persons lying in bed, to jar articles on the tables, and to move the pictures and shake the windows and the chandeliers. The witnesses compared the accompanying noises to those caused by thunder, earthquakes, and the explosions of gunpowder. See pages 325, 326, 159 N. Y., 54 N. E. 57, 70 Am. St. Rep. 550. The court decided that such an invasion of private property was not authorized by the general statutory power to construct and operate a steam surface railroad. Here, however, the defendant has done nothing except to construct and operate its railroad in accordance with the increasing demands of the time, and, whatever injury is inflicted upon the plaintiff being incidental to that increase must be deemed to be within the terms of the conveyance of the defendant's property, to which her own conveyance is subject. Aside from the maintenance of the incline, every act complained of is a necessary incident to the running of trains of cars propelled by steam. The rumble of trains, the clanging of bells, the shriek of whistles, the blowing off of steam, the discordant squeak of wheels in going around the curves, the emission of smoke, soot, and cinders, all which accompany the operation of steam cars, are undoubtedly nuisances to neighboring dwellings in a popular sense; but, as they are necessarily incident to the maintenance of the road, they do not constitute nuisances in a legal sense, but are regarded as protected by the legislative authority which created the corporation and legalized its corporate operations. Nor does the legal nature of such annoyances change as increasing traffic increases them in vol-

ume and extent.  If the defendant had constructed an elevated rail-road as such, a different question might possibly be presented.  It was held in P. R. T. Co. v. Dash, 125 N. Y. 93, 26 N. E. 25, 10 L. R. A. 728, that the provisions of the general railroad act (chapter 140, p. 211, Laws 1850, as amended) conferred no right upon a steam rail-road company organized under it to build an elevated road across the city of New York from Spuyton Duyvel creek to the Battery; but Judge Peckham was careful to limit the application of the decision to the special facts of that case, saying (page 103, 125 N. Y., page 28, 26 N. E., 10 L. R. A. 728):

"Nor would we say that a railroad company, to be properly organized under the act, must be wholly confined to a surface road, and not at all an elevated or underground structure."

In Beekman v. Brooklyn & B. B. R. R. Co., 89 Hun, 14, 35 N. Y. Supp. 84, it was held that the construction of a connection between a steam surface railroad and one of the elevated roads in Brooklyn was within the general corporate powers of the company operating the surface road.  Mr. Justice Cullen, in the opinion delivered at the Special Term, said (page 17, 89 Hun, page 85, 35 N. Y. Supp.):

"Common knowledge informs us that an elevated railroad of less than half a mile in length, and dropping to the surface in that distance, can neither be operated by itself for rapid transit nor as a part of the elevated railroad system in Fulton street.  That the connection may be very advantageous to both roads and increase the travel on each is plain, and doubtless for this purpose the extension is to be made.  But I find that the structure intended to be erected is not made for purposes of changing in any manner the general character of defendant's railroad, but solely that it may connect its road with the Kings County Road at the grade of the latter.  Such a structure, built for that purpose, is not within the condemnation passed in the Dash Case."

This decision was followed in Gallagher v. Keating, 27 Misc. Rep. 131, 58 N. Y. Supp. 366, Mr. Justice Maddox holding that a steam surface railroad could lawfully construct an incline upon its own prop-erty to connect with an elevated railroad in Brooklyn.  That case was affirmed in this court on another ground, without passing on the ques-tion considered at the Special Term (Gallagher v. Keating, 40 App. Div. 81, 57 N. Y. Supp. 632, 1123), and it was again affirmed in the Court of Appeals without opinion (Gallagher v. Keating, 171 N. Y. 657, 63 N. E. 1116).

The case of Eldert v. Long Island Electric R. Co., 28 App. Div. 451, 51 N. Y. Supp. 186, cited by the learned counsel for the re-spondent, is not in point.  In that case the incline was designed to con-nect a street surface railroad with an elevated road, and it was built upon a public highway.  The court held that such a structure imposed' an additional burden upon the highway, not contemplated by the original consent of the property owners to the construction of the street surface railroad, and that the highway commissioners had no power to authorize its erection.  Here, however, the structure is upon the defendant's own property, and, being made solely for the purposes of its corporate existence, cannot be regarded in itself as an invasion of any of the plaintiff's property rights independently of the question of the legality of the union between the two roads.  A property owner

has no easement in adjoining property, and certainly not in property across the street, even when owned by a railroad company, which confers the right to prohibit the erection of a building or other structure thereon. The character of the defendant's road is not changed at all by the erection of the incline complained of in this action. It is still a steam surface railroad, with the grade changed to the maximum height of 10 feet in front of the plaintiff's property, and whatever injury results from the change is to be regarded under the authorities as damnum absque injuria.

In Egener v. N. Y. & Rockaway Beach R. Co., 3 App. Div. 157, 38 N. Y. Supp. 319, the defendant filled in the open trestlework by which its tracks were originally supported, and made a solid embankment of earth and stone, the result of which was to intercept and flow back a large volume of surface water upon the adjoining lands of the plaintiff; but it was held that no injunction would lie, and that the defendant was possessed of the same rights as individual owners in the premises, and could not be compelled to pay damages in the absence of negligence or unskillfulness in the actual work of construction.

The views herein indicated find some support in the recent cases arising from the change of grade of the New York Central & Hudson River Railroad on Fourth avenue in the borough of Manhattan, where the change was made under legislative sanction, but in the highway itself. See Conabeer v. N. Y. Central & H. R. R. R. Co., 156 N. Y. 474, 51 N. E. 402, and Fries v. New York & Harlem R. R. Co., 169 N. Y. 270, 62 N. E. 358. The case of Lewis v. New York & Harlem R. R. Co., 162 N. Y. 202, 56 N. E. 540, involved the same question as the others cited, excepting that, as the defendant's rights in that case appeared to be prescriptive only, they were necessarily limited in their extent to the prescriptive user. Bearing in mind that the defendant's road is not upon public property at all (not upon any street or highway); that the plaintiff is not an abutting or adjoining owner, but is separated from the railroad by half the width of Atlantic avenue; and that the defendant's rights in this case are correspondingly greater by reason of these facts than in the Conabeer Case, supra—the following from Judge Martin's opinion in that case (page 487, 156 N. Y., page 406, 51 N. E.) seems quite decisive, viz.:

"It is manifest that the only injury the plaintiff has sustained resulted from the proper use and operation of the defendants' steam railway, and, as the plaintiff's grantor expressly conveyed to the defendants the right to maintain and operate it there, the plaintiff cannot recover for any injuries arising from that cause. The defendants' use of the street for the purpose of building, maintaining, and operating its railroad was a legal one. It was constructed and is maintained and operated under and by virtue of the grant by Mrs. McGown and the combined authority of the Legislature and municipality. 'The Legislature, by virtue of its general control over public streets and highways, has power to authorize structures in the streets which, without such authority, and under the common law, would be held to be encroachments or obstructions, and this power it may delegate to the governing body of a municipal corporation.' Wormser v. Brown, 149 N. Y. 163, 171, 43 N. E. 524, 526. As the appropriation of this street by the defendant for the purpose of constructing and maintaining its road was legal, no merely consequential damage to the owner of an adjoining lot, having no title to the street, furnishes a ground of action against the defendant. Fobes v. R., W. & O. R. R. Co., 121 N. Y. 505, 518, 24 N. E. 919, 8 L. R. A. 453. Where a rail-

road is built in a public street or highway with proper care and skill, after the public rights and private property, if any, in the highway or soil have been acquired, the railroad is not responsible for any damages to private property necessarily resulting from its construction and operation. Uline v. N. Y. C. & H. R. R. R. Co., 101 N. Y. 98, 4 N. E. 536, 54 Am. Rep. 661; Conklin v. N. Y., O. & W. R. Co., 102 N. Y. 112, 6 N. E. 663."

If this is true of a railroad built upon the public highway, I cannot see why it should not apply with greater force in the case at bar, where the cause of complaint is precisely the same, excepting that the acts complained of here are committed upon soil of which the defendant has the absolute fee, and add no burden to public property or impair any recognized ·easement.

The judgment should be reversed, with costs, and the complaint dismissed, with costs. All concur.