# MEMPHIS ST. RY. CO. *v.* RAPID TRANSIT CO., *et al.*

## (*Knoxville.* September Term, 1915.)

1. **CONSTITUTIONAL LAW. Constitutional questions. Necessity of decision.**

The supreme court on appeal has jurisdiction and will determine the constitutionality of a law, although the cause can be decided upon other grounds, where the constitutional question is made in good faith and relied on in the case, since by Acts of 1907, ch. 82, establishing and defining the powers of the court of civil appeals, jurisdiction of that court is defeated by the presence of a constitutional question. (*Post, pp.* 104-107.)

Acts cited and construed: Acts 1907, ch. 82; Acts 1915, ch. 60.

Case cited and approved: Campbell Co. v. Wright, 127 Tenn., 1.

2. **LICENSES. Carriers. Jitneys.**

Under Acts 1915, ch. 60, making jitneys common carriers, and requiring them, under ordinances of the cities or towns, to file bonds and perform the conditions of the statute and ordinances, a jitney company is altogether without right to do business on the streets of a city, where the city has passed no ordinance pursuant to the act, and the company has failed to procure any license or execute any bond under the act. (*Post, pp.* 107, 108.)

Case cited and approved: City of Memphis et. al. v. State ex rel. Ryals, 133 Tenn., 83.

3. **INJUNCTION. Right to invoke. Exclusive franchise.**

Where the plaintiff street railway company has a franchise from the city, its franchise is a property right, under which it can restrain any person from becoming a common carrier of passengers in competition with it without legislative or municipal authority, and for that purpose its franchise is exclusive against all persons upon whom similar rights have not been conferred. (*Post, pp.* 108-114.)

Cases cited and approved: Raritan & Delaware Bay R. R. Co. v. Delaware & Raritan Canal Co., 18 N. J. Eq., 546; Penn. R. R. Co. v. Nat. R. R. Co., 23 N. J. Eq., 441; Jersey City Gas Co. v. Dwight, 29 N. J. Eq., 242; Elizabethtown Gas Co. v. Green, 46 N. J. Eq., 118; Patterson v. Wollmann, 5 N. D., 608; Green v. Ivey, 45 Fla., 338; Tugwell v. Ferry Co., 74 Tex., 480; Bartlesville Elec. L. & Power Co. v. Bartlesville I. R. Co., 29 L. R. A. (N. S.), 77.

4. INJUNCTION. Right to remedy. Doubtful case.

An injunction will not be awarded to protect an alleged right, except upon a clear case. (*Post, pp.* 114, 115.)

Cases cited and approved: Geneva-Seneca Electric Co. v. Economic Power & Const. Co., 136 App. Div., 219; Coffeyville Min. & Gas Co. v. Citizens' Natural Gas & Min. Co., 55 Kan., 173; Market St. Ry. Co. v. Pen. Ry. Co., 51 Cal., 583.

5. INJUNCTION. Right to remedy. Grounds.

Where, under an act of the legislature, municipalities are authorized to regulate by ordinance, subject to the statute, the operation of jitney busses as common carriers, and the city counsel fails to regulate, a street railway company can have the operation of jitneys enjoined, since the city council might fail to act at all under the statute, and thus the rights of the company be unlawfully invaded. (*Post, pp.* 115, 116.)

Case cited and approved: Levisay v. Delp, 68 Tenn., 415.

Code cited and construed: Secs. 1697, 1703 (S.).

6. MUNICIPAL CORPORATIONS. Unauthorized operation of jitneys. Nuisance. Injunction.

Where statute authorizes the regulation of jitneys, and prohibits their operation, except upon conditions named, and those conditions are not fulfilled, but many jitneys are operated with consequent danger to persons and property, they constitute a nuisance, and may be enjoined on the bill of a private individual who can show special damage to himself. (*Post, pp.* 116-118.)

Cases cited and approved: Weakley v. Page, 102 Tenn., 179; Richi v. Chattanooga Brewing Co., 105 Tenn., 651; Weidner v.

Memphis St. Ry. Co. v. Rapid Transit Co.

Friedman, 126 Tenn., 677; Sloss-Sheffield Steel Co. v. Johnson, 147 Ala., 384.

**7. MUNICIPAL CORPORATIONS.** Obstruction of streets. Right to remedy.

Relief by an injunction against a nuisance by which the highway is obstructed need not be sought by an abutting owner, but may be had by any individual who can show special damage to himself. (*Post, pp.* 118-120.)

Cases cited and approved: Eldert v. Long Island Elec. R. Co., 28 App. Div., 451; People's Gas Co. v. Tyner, 131 Ind., 277; Keystone Bridge Co. v. Summers, 13 W. Va., 476.

Case cited and distinguished: Draper v. Mackay, 35 Ark., 497.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County. —F. H. HEISKELL, Chancellor.

CHARLES T. CATES, JR., and WRIGHT, MILES, WARING & WALKER, for appellant.

CARUTHERS EWING, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

This bill was filed by the Memphis Street Railway Company to enjoin the Rapid Transit Company and other defendants from operating jitneys on the streets of Memphis in competition with the complainant's street cars. A demurrer was interposed by defend-

ants, and sustained by the chancellor, and the complainant has appealed to this court.

Complainant alleged that it was organized under the laws of Tennessee, and had a franchise from the city of Memphis to operate a street railway system in that city; that it had expended in excess of $10,000,000 in constructing and equipping its street railway lines; that it operated about one hundred and twenty-nine miles of track, extending over all parts of the city; and that it had complied with all the laws of Tennessee and all the terms of its franchise from the city of Memphis.

The bill further averred that the defendants were engaged in operating jitneys or jitney busses upon the streets of Memphis in competition with the complainant, and that defendants were conducting this business without having made any attempt to comply with the statute of Tennessee regulating said business; that said defendants were operating their automobiles on the same streets upon which complainant ran its cars; that the jitneys were running at high rates of speed, cutting in front of complainant's cars, and racing by the cars in their efforts to reach the stopping places first, in order to pick up passengers; that they frequently ran in front of complainant's cars, thus forcing the cars to be stopped in order to prevent accident; that they often ran dangerously close to and by complainant's cars while the cars were standing for the purpose of taking off and discharging passengers, thereby causing many very serious accidents and even

deaths.  It was said that such operation of the said jitneys was hindering and impeding complainant from giving first-class service; that such illegal and unauthorized competition was depriving complainant of a large amount of revenue, by unlawfully diverting from it.intended passengers upon its cars.  The bill contains other charges upon which it is not necessary to dwell.

The general assembly of Tennessee, in 1915, by chapter 60, Acts of that year, undertook to regulate the jitney business in the cities and towns of this State. This act declared those operating such vehicles to be common carriers, and provided that the operation of these conveyances should be unlawful in the incorporated cities or towns of this State without first obtaining a permit or license under ordinance from said city or town, and it was further provided that no such license should be issued unless the owner or operator filed with the clerk of the county court in the county in which the business was proposed to be done, a bond of not less than $5,000 to cover loss of life or injury to person or property inflicted by such carrier or caused by his negligence.  It was further enacted that said license should embody such routes, terms, and conditions as the city or town might elect to impose, provided that no such permit or license should be granted which did not require the execution and filing of the bond mentioned above.  Said act is set out in the margin of this opinion.[1]

---

[1] An act to define as common carriers within this State, persons, firms and corporations operating certain self-propelling public conveyances and affording means of street transportation similar

The demurrer of defendants challenges the constitutionality of the act referred to and relied on by complainant. It does not distinctly appear whether the chancellor passed on the constitutionality of the statute or based his decision on other grounds of the demurrer. It is said by counsel for defendants that the result below was reached without consideration of the validity of the act in question, and it is urged that the case can be determined in this court without reference to the said act. Defendants therefore insist that this court is without jurisdiction, and the case is properly one for the court of civil appeals; that no constitutional question is involved.

We are referred to cases in which it is said that the constitutionality of a statute will not be considered or

---

to that ordinarily afforded by street railways but not operated upon fixed tracks, to declare the business of all such common carriers a privilege and to forbid and declare a misdemeanor their operation upon streets, alleys, public places of incorporated cities or towns without obtaining permits or licenses from such cities or towns and giving bond to indemnify against loss of life and damage to person and property; and to authorize incorporated cities and towns of this State to grant permits and licenses to such carriers to operate over streets, alleys and public places and to fix routes, terms and conditions of such operation, and to limit such operation in the interest of public convenience and safety, and to impose a tax for the exercise of the privilege herein granted.

Section 1. Be it enacted by the general assembly of the State of Tennessee, that any person, firm or corporation operating for hire any public conveyance propelled by steam, compressed air, gasoline, naphtha, electricity or other motive power for the purpose of affording a means of street transportation similar to that ordinarily afforded by street railways (but not operated upon fixed tracks) by indiscriminately accepting and discharging such persons as may offer themselves for transportation along the way and course of operation, be and the same is hereby declared and defined to be a common carrier, and the business of all such common carriers is hereby declared to be a privilege.

Section 2. Be it further enacted, that it shall be unlawful for any common carrier as defined in section 1 of this act, to use or

adjudged if the case can be otherwise decided. We do not think, however, such a rule should control here. We have formerly said that, when any question involving the constitutionality of an act of the legislature is *bona fide* made and relied on in a case, this court should take appellate jurisdiction of such a case under chapter 82, of the Acts of 1907. *Campbell County* v. *Wright,* 127 Tenn., 1, 151 S. W., 411.

The chief contention of complainant in this case is that defendants are outlaws on the streets of Memphis, with no right to pursue their business, by reason of the fact that the city has passed no ordinance giving them permission to operate, and because they have made no bonds, according to the provisions of chapter 60, Acts

occupy any street, alley or other public place in any incorporated city or town of this State without first obtaining from such city or town a permit or license by ordinance giving the right to so use or occupy such street, alley or other public place, such permit or license to embody such routes, terms and conditions as such city or town may elect to impose: Provided however, that no such permit or license shall be granted which does not require the execution and filing of a bond as provided for in section 3 of this act.

Section 3. Be it further enacted, that any such common carrier, before operating any public conveyance as aforesaid, in addition to obtaining a permit or license as aforesaid, shall execute to the State of Tennessee and file with the clerk of the county court of the county in which the business is to be carried on, and renew or increase from time to time as may be required by such city or town, a bond with good and sufficient surety or sureties, to be approved by the mayor of such incorporated city or town, in such sum as such city or town may reasonably demand (in no case, however, in a sum less than five thousand dollars for each car operated), conditioned that such common carrier will pay any damage that may be adjudged finally against such carrier as compensation for loss of life or injury to person or property inflicted by such carrier or caused by his negligence.

Section 4. Be it further enacted, that any common carrier as defined in section 1, of this act which shall use or occupy any street, alley or other public place in any incorporated city or town of this State without first obtaining a permit or license to so use and occupy such street, alley or other public place, or shall operate any

of 1915. Defendants, as we have said, challenge the constitutionality of this act. We think, therefore, the constitutional question in this case is *bona fide,* and that constitutional rights are relied on.

Although we appreciate the delicacy of passing on the validity of an act of the legislature, such a duty is often imposed upon us, and we must not dodge our jurisdiction. Where an act of the legislature undertakes to regulate a particular subject, and the application of such an act is invoked by one party in a suit involving that subject, and the validity of the act is questioned by the other party, we think it proper that the statute should be tested. Statutes are enacted to make the law plain and rights distinct. They are intended to be administered, and it is not incumbent upon

---

such conveyance without first executing and filing bond as required by section 3 of this act shall be guilty of a misdemeanor and shall upon conviction be fined not less than fifty dollars nor more than one hundred dollars for each offense, and each day upon which such common carrier shall so unlawfully use or occupy any street, alley or other public place in any incorporated city or town of this State, shall constitute a separate offense.

Section 5. Be it further enacted, that all incorporated cities and towns of this State be and they are hereby authorized and empowered to grant permits or licenses to such common carriers to operate over the streets, alleys and public places of such cities and towns, and to fix in such licenses and permits the routes, terms and conditions upon which such common carriers may operate, subject to the limitations contained in section 2 of this act: Provided that no license or permit shall be granted to any such common carrier without the execution and filing of bond as required by section 3 of this act being required.

And all such incorporated cities and towns are hereby authorized and empowered to impose upon all such common carriers a tax for the exercise of the privilege herein granted.

Section 6. Be it further enacted, that if any section ōr part of this act be for any reason held unconstitutional or invalid, such holding shall not affect the validity or the remaining portions of this act, but such remaining portions shall be and remain valid.

Section 7. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it.

Memphis St. Ry. Co. v. Rapid Transit Co.

the courts to enter upon a difficult and doubtful investigation of the rights of the parties under the common law—such rights being defined by a statute—merely to avoid passing on the constitutionality of such a statute.

So we think that there is a constitutional question in this case properly made, and that this court has appellate jurisdiction.

Chapter 60, Acts of 1915, has been considered, and the act adjudged valid and constitutional, in the case of *City of Memphis et al.* v. *State of Tennessee ex rel. S. B. Ryals,* 179 S. W., 631, opinion in which has just been filed by Mr. Justice Williams. It is not, therefore, necessary to further discuss this question in this opinion.

The act being valid, there is little trouble as to its proper construction. We have heretofore intimated our conception of its meaning. Under it, no jitney may be operated in any city or town of the State of Tennessee, except under a license or permit from said city or town, issuing under an ordinance passed in conformity with the said statute, nor shall such permit or license be issued until the statutory bond has been executed and filed with the county court clerk. In other words, jitneys have no right to operate on the streets of any incorporated city or town in Tennessee until an ordinance has been passed providing for licenses or permits, and such permits or licenses have been secured, and they have no right then to operate until they have made bond as required by the statute.

In the case before us the city of Memphis has passed no ordinance authorizing the issuance of licenses or permits to engage in this business, nor have the defendants undertaken to procure any such licenses, nor have they executed any bonds.

It is very clear, then, that defendants have no right whatever to do business on the streets of Memphis. They are lawbreakers, subject to criminal prosecution, operating in direct violation of the statute of this State.

These conclusions upon the statute being reached, many of the questions presented by the demurrer of defendants as to their common-law rights are eliminated from further consideration. The *status* of defendants is fixed by the act. There remains, however, the question as to the right of the complainant to an injunction against defendants under the circumstances above detailed.

The complainant does not seek an injunction here on the theory that it is possessed of an exclusive franchise to conduct the business of common carrier of passengers on the streets of Memphis. The contention of complainant is that, having been granted a franchise as such common carrier, it has a property right that will entitle it to restrain any person or corporation from attempting to engage in the business of common carrier of passengers on the streets of Memphis, in competition with complainant, without legislative or municipal authority. Complainant concedes that its franchise is not exclusive, in the sense that a similar

franchise might not be granted to another to be exercised and enjoyed in the city of Memphis; but it maintains that its franchise is exclusive against all persons upon whom similar rights have not been conferred by legislative sanction.

We think this contention is well founded and supported by the great body of authority. In Pomeroy's Equity Jurisprudence it is said:

"An injunction is the appropriate remedy to protect a party in the enjoyment of an exclusive franchise against continuous encroachments. Such continuous encroachments constitute a private nuisance, which courts of equity will abate by injunction. The jurisdiction rests on the firm and satisfactory ground of its necessity to avoid a ruinous multiplicity of suits, and to give adequate protection to the plaintiff's property in his franchise. To be entitled to relief, a plaintiff need only show that he is entitled to a franchise, and that there is continuous interference therewith by the defendant. It is not necessary that the plaintiff first establish his right at law." Pomeroy's Eq. Jur., sec. 583.

Further it is said:

"It is not necessary 'to entitle the owner to relief in equity, that the franchise should be an exclusive franchise in the sense that the granting of another franchise to be exercised and enjoyed at the same place would be void.' The theory is 'that the defendant who has no franchise, is acting in violation of law in operating . . . without authority from the sov-

ereign power, and that the owner of the franchise may
complain of and restrain such illegal acts when they
result in injury to his franchise, which, in the eye of
the law, is property. As to the one who is invading
his rights without legal sanction, the franchise is an
exclusive franchise, although the owner of it might not
be entitled to any protection as against the granting
of a similar franchise to another.'" Pomeroy's Eq.
Jur., sec. 584.

In dealing with a controversy between two electric
light companies, one without a franchise, the supreme
court of Oklahoma observed:

"When plaintiff accepted its franchise, it did so sub-
ject to the power of the municipality to grant other
persons or corporations similar, franchises, and with
the knowledge that it might be compelled to exercise
its rights under its franchise with others exercising
similar rights. If, by the competition of rival com-
panies to whom the use of the streets and public
grounds has been granted by the municipality, plain-
tiff is rendered unable to discharge the obligations of
its contract to furnish the city and its inhabitants with
light and power at stipulated prices, except at a fi-
nancial loss to it, plaintiff cannot complain, for it must
be held to have contemplated such condition might
arise, and to have agreed thereto when it accepted the
franchise; but such cannot be said of the defendant,
who unlawfully occupies the streets and public grounds
of the city in competition with plaintiff. By its un-
lawful acts defendant can and will take from plaintiff

a portion of its business. At the same time, defendant is under no obligation to the city or its inhabitants, and is all the while maintaining upon the streets and public grounds of the city a public nuisance, and the loss plaintiff sustains is to defendant its fruits from its violation of the law. By these unlawful acts of defendant, plaintiff may be rendered financially unable to comply with the obligations of its contract, and may be subjected to suits for damages, mandamus proceedings to enforce the performance of its contract, or an action to forfeit its franchise. Defendant does not undertake to compete with plaintiff for the business of the city and its inhabitants by furnishing to them light and power other than by the use of the streets and alleys. Its right to sell light and power is not dependent upon any franchise, but its right to use the streets and public grounds of the city for that purpose does depend upon the consent of the city; and, when it uses the streets without that consent, it is not only guilty of maintaining a public nuisance, but also inflicts upon plaintiff a special injury by its unlawful act, which may be restrained." *Bartlesville E. L. & P. Co.* v. *Bartlesville I. R. Company,* 26 Okla., 457, 109 Pac., 229, 29 L. R. A. (N. S.), 81.

In a similar case the New Jersey court said:

"Legislative grants of franchises of the nature claimed by complainant, whether granted by special . . . privileges which are necessarily exclusive in their nature as against all persons upon whom similar rights have not been conferred, for any attempted

exercise of such rights, without legislative sanction, is not only an unwarranted usurpation of power, but operates as a direct invasion of the private property rights of those upon whom the franchises have been so conferred. *Raritan & Delaware Bay R. R. Co.* v. *Delaware & Raritan Canal Co.,* 18 N. J. Eq. (3 C. E. Gr.), 546, 569; *Penn. R. R. Co.* v. *Nat. R. R. Co.,* 23 N. J. Eq. (8 C. E. Gr.), 441, 447; *Jersey City Gas Co.* v. *Dwight,* 29 N. J. Eq. (2 Stew.), 242, 250; *Elizabeth-town Gas Co.* v. *Green,* 46 N. J. Eq. (1 Dick.), 118, 124 (18 Atl. 844). It follows that, if complainant is at this time entitled to exercise in the disputed territory the privileges set forth in the legislative act referred to, and defendant, as claimed, enjoys no legislative sanction for the conduct sought to be enjoined, complainant will be entitled to the relief prayed for." *Millville Gas L. Co.* v. *Vineland L. & P. Co.,* 72 N. J. Eq., 305, 65 Atl., 504.

The same question has often arisen with reference to ferries, and the courts have awarded injunction against the operation of unlicensed ferries at the suit of the ferryman legally authorized to conduct his business.

In one of these cases the supreme court of Mississippi said:

"A public ferry cannot be erected and operated in this State without a special license therefor, and such license bestows upon the licensee the exclusive right of such ferry—exclusive as to all persons, except that the board of supervisors may establish as many ferries

as the public convenience may require at the same or adjacent places of crossing. Every such licensee, however, is required to give bond with security for the performance of the obligations assumed by him, which impose upon him the duties of keeping a proper and safe boat and equipments, and of his constant attendance at the ferry, and of the due and speedy transportation over it of all persons and property desired to be transported, and to secure these and other stringent duties required of him he is placed under heavy liabilities, civil and criminal, for their performance, all of which is necessary for the public convenience, and as a remuneration for his services and liabilities he is allowed a fixed rate of ferriage. The right secured to the licensee is a legal right, created by public law, and not to be infringed except by the authority of the State itself; and such right would be of no avail, unless the party holding it is protected by law in its enjoyment. Indeed, it is a maxim of law that there is no right without a remedy, for 'whensoever the law giveth any right,' says Coke, 'it also giveth a remedy.' Coke on Litt., 56. The ferry right of appellant should have secured to him the tolls lost to him by the infringement of his right by the defendants, and they should make him whole for the damages that he has sustained, to be measured by the amount of tolls diverted." *McInnis* v. *Pace,* 78 Miss., 550, 29 South., 835.

Other ferry cases are *Patterson* v. *Wollmann,* 5 N. D., 608, 69 N. W., 1040, 33 L. R. A., 537; *Green* v. *Ivey,*

133 Tenn. 8

45 Fla., 338, 33 South., 711; *Tugwell* v. *Ferry Co.*, 74 Tex., 480, 9 S. W., 120, 13 S. W., 654. All these cases sustain the views expressed in the foregoing quotations, and many other cases in which the same doctrine is recognized are collected in a note to *Bartlesville Elec. L. & Power Co.* v. *Bartlesville I. R. Co.*, reported in 29 L. R. A. (N. S.), 77.

We are unable to follow the effort of learned counsel for the defendants to distinguish the cases from which we have quoted from the case here presented. We think the foregoing authorities are sound and should control this controversy.

When a business may not be conducted as a matter of common right, but legislative authority is necessary, such authority, when conferred, is exclusive against all persons not endowed with like authority. Such rights, so bestowed by law, may not be infringed, except by authority of the State, and will be protected by injunction against unlawful invasion.

As a matter of course, the observation just made is only applicable to clear cases, as the case before us. If the franchise or license of a complainant was doubtful, an injunction would not be awarded to protect it, nor could the validity of a license or franchise possessed by a competing defendant be questioned, and its exercise restrained, in proceedings of this character. *Geneva-Seneca Electric Co.* v. *Economic Power & Const. Co.*, 136 App. Div., 219, 120 N. Y. Supp., 926; *Coffeyville Min. & Gas Co.* v. *Citizens' Natural Gas & Min. Co.*, 55 Kan., 173, 40 Pac., 326; *Market St. Ry. Co.* v.

*Pen. Ry. Co.,* 51 Cal., 583.   We are in full accord with
the views expressed in these and like cases. Questions
upon the regularity of a charter, the validity of a fran-
chise, and the like, are to be determined upon suit of
the attorney-general or other constituted authority,
and not on suit of a competing corporation.

In the case at bar, however, defendants make no claim
to any license or franchise, although such license is
a statutory prerequisite to the pursuit of defendants'
business. The validity of complainant's franchise, on
the other hand, is not impeached.

We are referred to the case of *Levisay* v. *Delp,* 9
Baxt. (68 Tenn.), 415, as laying down a contrary rule.
In that case a licensed ferryman, the owner of one
bank of the river, sought an injunction against the
unlicensed operation of a ferry in competition by the
owner of the other bank of the river.   Under Shan-
non's Code, secs. 1697, 1703, the owner of either bank
of a river is entitled to keep a ferry, but "all ferry
keepers are required to procure a license and execute
a bond."   The court refused an injunction, saying
with reference to the defendant:

"It would be an idle exercise of the injunctive power
by the court to restrain him in this case, when, as
owner of one bank of the river, he may apply to the
county court and obtain a license or order establishing
his ferry, thus legalizing it at the next term of that
court."

*Levisay* v. *Delp,* supra, was no doubt correctly de-
cided on the facts appearing in that case, inasmuch

as the defendant there could have procured his license as a matter of right almost by the time the injunction sought would have become effective. The injunction would have accomplished little or nothing.

The injunction cannot be refused in this case on such a ground. An injunction may accomplish much here. The city of Memphis may decline to authorize the operation on its streets of jitney cars at all. At any rate, an injunction restaining the operation of such cars until the statutory bond is executed will eliminate all irresponsible owners.

In so far as *Levisay* v. *Delp* intimates that an injunction may not issue to protect a franchise, unless that franchise be exclusive of the right of the State to confer on others a like franchise, we are unwilling to adhere to it. We think these remarks of the learned judge delivering the opinion were obiter, and not fully considered, and they are in conflict with the great weight of authority, as we have heretofore shown. We therefore must confine the authority of the case of *Levisay* v. *Delp,* supra, to its own facts.

We are of opinion, moreover, that complainant is entitled to the injunction sought on another ground. As we have stated, the operation of jitneys on the streets of any incorporated city or town in Tennessee without municipal permission, when the owners have executed no bond, is absolutely unlawful. Such operation is in defiance of the statute of this State and amounts to a public nuisance.

"Any unauthorized obstruction of a public highway is a nuisance." 37 Cyc., 247.

"Any unauthorized obstruction which necessarily impedes or incommodes the lawful use of a highway is a public nuisance at common law." Elliott on Roads and Streets, sec. 644.

"All unauthorized and illegal obstructions which prevent or interfere with the free use of a street or highway as such are within the legal notion of a nuisance." McQuillan on Municipal Corporations, sec. 925.

"An obstruction may be a nuisance, although it is not of a permanent character." Elliott on Roads and Streets, sec. 648 (giving many illustrations).

Under the authorities quoted there can be no doubt but that the illegal operation of the swarm of jitneys described in the bill, run by irresponsible owners, racing with the street cars for patronage, and otherwise imperiling the safety of the public, in violation of law, constitutes a nuisance. The law is well settled that a public nuisance may be enjoined by a private individual, provided the latter shows special damage to himself resulting therefrom. *Weakley* v. *Page,* 102 Tenn., 179, 53 S. W., 551, 46 L. R. A., 552; *Richi* v. *Chattanooga Brewing Co.,* 105 Tenn., 651, 58 S. W., 646; *Weidner* v. *Friedman,* 126 Tenn., 677, 151 S. W., 56, 42 L. R. A. (N. S.), 1041; 37 Cyc., 253; High on Injunctions, sec. 816 *et seq.*

A frequent application of this rule is in favor of persons specially injured by nuisances on a public highway.

In *Richi* v. *Chattanooga Brewing Co.,* 105 Tenn., 651, 58 S. W., 646, it was held that an abutting owner was entitled to enjoin an unauthorized construction and operation by a private corporation for its own use of a private railroad along the street, which destroyed the ingress and egress of such owner to and from his premises.

Such a right of injunction is conceded to abutting owners in almost every jurisdiction, when they show special damages by reason of the obstruction of the highway. High on Injunctions, sec. 816. See cases collected in a note to *Sloss-Sheffield Steel Co.* v. *Johnson,* 147 Ala., 384, 41 South., 907, 8 L. R. A. (N. S.), 226, 119 Am. St. Rep., 89, as reported in 11 Ann. Cas., 285.

It is not necessary that the relief should be sought by an abutting owner, for it has been said that the character of the injury is not determined by the location of the property. The mere fact that an individual's property is at some distance from the obstruction does not determine whether or not his damage is special. *Eldert* v. *Long Island Elec. R. Co.,* 28 App. Div., 451, 51 N. Y. Supp., 186.

A neighboring landowner has been held to be entitled to enjoin the accumulation of an unlawful quantity of nitroglycerin on defendant's premises, where the complainant's property was so located as that he might be specially damaged by an explosion. *People's Gas Co.*

v. *Tyner*, 131 Ind., 277, 31 N. E., 59, 16 L. R. A., 443, 31 Am. St. Rep., 433.

The owner of a licensed ferry has been granted an injunction against the obstruction of a public road leading to his ferry. The court said:

"The obstruction of the public road leading to plaintiff's ferry was a public nuisance and an injury to him specially; and his right to injunction against the continuance of such a nuisance is unquestionable." *Draper* v. *Mackay*, 35 Ark., 497.

An injunction has also been awarded against the obstruction of a road leading to a toll bridge, at the suit of the owner of the bridge. The court was of opinion that such an obstruction, which would divert travel from the road and cause a loss of tolls to plaintiff, went to the substance and value of plaintiff's estate as the owner of a franchise to operate the bridge. *Keystone Bridge Co.* v. *Summers*, 13 W. Va., 476.

So, without multiplying authorities, we conclude that on the ground last stated, as well as the former, the complainant in this case is entitled to an injunction. There can be no question but that the operation of the jitneys in the manner described in the bill, in contempt and disregard of the law of Tennessee, constitutes a public nuisance on the streets of Memphis. There is not the slightest doubt but that the complainant suffers special damage by reason of such nuisance. Complainant's loss of revenue by reason of the illegal competition amounts, it is alleged, to several hundred dollars each day. This damage is distinct and peculiar

to complainant, and is an injury, to borrow the phrase of the West Virginia court, in the very substance and value of its estate.

The decree of the chancellor will be reversed. Within thirty days from this date an injunction will issue as prayed by the complainant. In the interest of the people of Memphis, who may be discommoded otherwise by the sudden removal of this means of transportation, we have thought it best to suspend the awarding of the injunction for a brief time, to permit the city of Memphis, should it so desire, to pass an enabling ordinance for the jitney owners, and to give to the latter an opportunity to comply with the terms of said ordinance and the statute of Tennessee.